**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
ANDREW CARLIN,                                               :
individually and on behalf of a class,                      :
                                                            :
                    Plaintiff,                              :
                                                            :
        v.                                                  :   COMPLAINT  – CLASS ACTION
                                                            :
DAVIDSON FINK LLP,                                          :
                                                            :
                    Defendant.                              :
-------------------------------------------------------------x
```

## INTRODUCTION

1.      Plaintiff Andrew Carlin brings this action to secure redress from unlawful credit and collection practices engaged in by defendant Davidson Fink LLP.   Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

## VENUE AND JURISDICTION

2.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28  U.S.C. §1331 and 28 U.S.C. §1337.

3.      Venue and personal jurisdiction in this District are proper because:

       (1)      Defendant's collection communications were received by plaintiff within this District;

       (2)      Defendant does or transact business within this District.

## PARTIES

4.      Plaintiff Andrew Carlin is an individual who resides in Sea Cliff,  New York, in a single family home which he owns.

5.      Defendant Davidson Fink LLP is a law firm organized as a limited liability partnership with its principal place of business at 28 Main Street East, Suite 1700, Rochester, New York 14614-1990.

6.      The practice areas of Davidson Fink LLP listed on its web site include

1

"collections" and "foreclosure." (http://www.davidsonfink.com/practice-areas/business-law)
Two attorneys are listed under "collections" and seven under "foreclosure," out of a total of about 24.

7.    According to the web site, "At Davidson Fink LLP, we provide a wide-range of debt collection services to financial institutions, banks, servicers, credit unions, and various commercial and consumer lending clients. We offer immediate and inexpensive options to recover unpaid funds with a comprehensive collection process which includes negotiating payment plans, judgment execution and enforcement."

8.    The same web site also states, "At Davidson Fink LLP, our attorneys, paralegals and staff are highly trained in New York State foreclosure proceedings. We combine our expertise, knowledge and experience with the most recent technology and a team-oriented approach to provide timely and cost-effective services. We take an aggressive approach to timeline management and loss mitigation and recognize the need for effective communication and meticulous attention to detail to successfully service our clients."

9.    Davidson Fink LLP regularly collects consumer debts originally owed to others, including residential mortgage debts, using the mails and telephone system for that purpose.

10.    Davidson Fink LLP is a debt collector as defined in the FDCPA.

## FACTS

11.    Davidson Fink LLP has been attempting to collect from plaintiff a residential mortgage loan obtained for personal, family or household purposes (housing).

12.    The loan was alleged to be in default when Davidson Fink LLP first became involved with it.

13.    On or about June 24, 2013, Davidson Fink LLP filed, on behalf of Deutsche Bank National Trust Company, a foreclosure action against Andrew Carlin in Nassau County Supreme Court.

14.    Davidson Fink LLP attempted to provide the notice required by 15 U.S.C. §1692g

2

as an attachment to the complaint.

15.    A copy of the summons, complaint and exhibits is attached as <u>Appendix A</u>.  The §1692g notice is the 11th page.

16.    Prior to the complaint, Mr. Carlin did not receive any letter or other communication from Davidson Fink LLP.  On information and belief, none was sent.

17.    Section 1692g provides:

**§ 1692g.  Validation of debts**

**(a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts.  If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer**

requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) Admission of liability. The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) Legal pleadings. A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

(e) Notice provisions. The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [26 USCS §§ 1 et seq.], title V of Gramm-Leach-Bliley Act [15 USCS §§ 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

18.     The 11th page of Appendix A states that "the amount of the debt is stated in the complaint hereto attached."

19.     The complaint does not state the present amount of the debt. Attached is a Schedule C which lists the original loan amount and the principal balance owing. However, the complaint also claims unspecified interest, taxes, assessment, water rates, insurance premiums, escrow "and/or other charges." (Paragraph "seventh").

20.     By letter of July 12, 2013, Mr. Carlin disputed the debt (Appendix B).

21.     More than five days afterwards, by letter of August 9, 2013, Davidson Fink LLP provided additional information about the debt (Appendix C [some exhibits omitted]).

22.     This letter enclosed a "payoff statement" which stated an amount of the debt, but also stated that "the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued."

23.     As a result, Davidson Fink LLP did not provide the "amount of the debt" as required by §1692g(a)(1). *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark,*

4

*L.L.C.*, 214 F.3d 872 (7ᵗʰ Cir. 2000) (not sufficient to state that unpaid principal balance of residential mortgage loan was $178,844.65, and that this did not include unspecified accrued but unpaid interest, unpaid late charges, escrow advances, and other charges authorized by loan agreement).

24.     It is the policy and practice of Davidson Fink LLP to attempt to comply with §1692g by:

a.     Attaching the §1692g notice to the complaint, which is excluded from the definition of "initial communication" under amended §1692g and which in any event does not contain a statement of the "amount of the debt" as required by §1692g(a)(1).

b.     Providing a "payoff statement" if the consumer requests the actual amount of the debt, which payoff statement includes unaccrued charges and thus also does not state "the amount of the debt."

## COUNT I – FDCPA

25.     Plaintiff incorporates paragraphs 1-24.

26.     The standard policy and practice employed by Davidson Fink LLP for the purpose

of attempting to comply with 15 U.S.C. §1692g violates 15 U.S.C. §1692g(a)(1), because the consumer is never furnished with a statement of the amount of the debt.

## CLASS ALLEGATIONS

27.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

28.     The class consists of (a) all individuals against whom Davidson Fink LLP filed a foreclosure complaint (b) without also providing a letter containing the amount presently owed, (c) which complaint was filed or served on or after a date one year prior to the filing of this action and ending 20 days after the filing of this action.

29.     The class is so numerous that joinder of all members is not practicable.  There are more than 40 class members.

30.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common question is whether defendant's standard practice for complying with 15 U.S.C. §1692g  violates the FDCPA.

31.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

32.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

33.     A class action is superior for the fair and efficient adjudication of this matter, in that:

a.     Individual actions are not economically feasible.

b.     Members of the class are likely to be unaware of their rights;

c.     Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant for:

i.      A declaration that defendant's practice violates the FDCPA;

ii.     Statutory damages;

iii.    Attorney's fees, litigation expenses and costs of suit;

iv.     Such other and further relief as the Court deems proper.

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza

6

Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (fax)
akleinman@kleinmanllc.com


Tiffany N. Hardy
EDELMAN, COMBS,
      LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (fax)
akleinman@kleinmanllc.com

T:\28793\Pleading\Complaint_Pleading.WPD

8

# APPENDIX A

REDACTED

COPY

STATE OF NEW YORK
SUPREME COURT          COUNTY OF NASSAU

DEUTSCHE BANK NATIONAL TRUST COMPANY AS
TRUSTEE FOR THE HOLDERS OF MORGAN
STANLEY ABS CAPITAL I INC., TRUST 2005-HE3,
MORTAGE PASS-THROUGH CERTIFICATES, SERIES
2005-HE3,

Plaintiff,

vs.

ANDREW P. CARLIN;
CITIBANK, N.A., AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE BEAR STEARNS
SECOND LIEN TRUST 2007-1, MORTGAGE-BACKED
NOTES, SERIES 2007-1;
and "JOHN DOE" and "MARY DOE,"
(Said names being fictitious, it being the intention of
plaintiff to designate any and all occupants, tenants, persons
or corporations, if any, having or claiming an interest in
or lien upon the premises being foreclosed herein.)

Defendants.

Filed: _6-24-13_

Index No.: _13-007648_

SUMMONS AND NOTICE

Mortgaged Premises:
6 15th Ave
Sea Cliff, (Village of Sea Cliff) NY
11579

RECEIVED

JUN 24 2013

NASSAU COUNTY
COUNTY CLERK'S OFFICE

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in the above entitled
action and to serve a copy of your Answer on the plaintiff's attorney within twenty (20) days
after the service of this Summons, exclusive of the day of service, or within thirty (30) days after
completion of service where service is made in any other manner than by personal delivery
within the State. The United States of America, if designated as a defendant in this action, may
answer or appear within sixty (60) days of service hereof. In case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the Complaint.

NOTICE OF NATURE OF ACTION AND RELIEF SOUGHT

THE OBJECT of the above captioned action is for the foreclosure of:

Mortgage bearing the date of April 15, 2005, executed by Andrew P. Carlin to Mortgage
Electronic Registration Systems, Inc., acting solely as a nominee for WMC Mortgage

Corp. to secure the sum of $200,000.00, and interest, and recorded in the Office of the Clerk of Nassau County on April 29, 2005 in Liber Book: M 28742 Page: 853.

That Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for WMC Mortgage Corp. duly assigned said Note and Mortgage to Deutsche Bank National Trust Company, as Trustee for the Holders of Morgan Stanely ABS Capital I Inc., Trust 2005-HE3, Mortgage Pass-Through Certificates, Series 2005-HE3 by Assignment dated May 9, 2012 and recorded on September 18, 2012 in the Office of the Clerk of Nassau County in Liber Book: M 37720 Page: 165.

The relief sought in the within action is a final judgment directing the sale of the premises described above to satisfy the debt secured by the Mortgage described above.

Plaintiff designates Nassau County as the place of trial. The basis of venue is the County in which the mortgaged premises is situated.

Section:   21
Block:     149
Lot:       694&741

DATED: __June 18, 2013__
Rochester, New York

### NOTICE
### YOU ARE IN DANGER OF LOSING YOUR HOME

If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home.

Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property.

Sending a payment to your mortgage company will not stop this foreclosure action.

YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.

BY: _____
Erinn K. Prestidge, Esq.
DAVIDSON FINK LLP
Attorneys for Plaintiff
Foreclosure Department
28 East Main Street, Suite 1700
Rochester, New York 14614
Tel: (585) 760-8218

### WE ARE ATTEMPTING TO COLLECT A DEBT.
### ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

STATE OF NEW YORK
SUPREME COURT       COUNTY OF NASSAU

---

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR THE HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC., TRUST 2005-HE3, MORTAGE PASS-THROUGH CERTIFICATES, SERIES 2005-HE3, | Filed: _____ |
| | Index No.: _____ |
| Plaintiff, | |
| | **VERIFIED COMPLAINT** |
| vs. | |

ANDREW P. CARLIN;
CITIBANK, N.A., AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE BEAR STEARNS
SECOND LIEN TRUST 2007-1, MORTGAGE-BACKED
NOTES, SERIES 2007-1;
and "JOHN DOE" and "MARY DOE,"
(Said names being fictitious, it being the intention of
plaintiff to designate any and all occupants, tenants, persons
or corporations, if any, having or claiming an interest in
or lien upon the premises being foreclosed herein.)

Defendants.

---

The plaintiff herein, by **Davidson Fink LLP**, its attorneys, complains of the defendants above named, and for its cause of action, alleges:

**FIRST:** Plaintiff, with an office at c/o Bank of America 400 Countrywide Way, Simi Valley, CA, is a corporation authorized to do business in this State or qualifies as a "foreign bank" pursuant to the relevant statutes and, as such, has standing and capacity to bring this action in the courts of the State of New York.

**SECOND:** Upon information and belief, that at all times hereinafter mentioned, the defendant(s) set forth in Schedule A reside or have a place of business at the address set forth therein and are made defendants in this action in the capacities therein alleged and for the purpose of foreclosing and extinguishing any other right, title or interest said defendants may have in the subject premises.

**THIRD:** That the United States of America, The People of the State of New York, The State Tax Commission of the State of New York, the Industrial Commissioner of the State of

New York, and all other agencies or instrumentalities of the Federal, State or local government (however designated), if made parties to this action and if appearing in **Schedule B**, are made parties solely by reason of the facts set forth in said schedule, and for no other reason.

**FOURTH**: That heretofore, the defendant, Andrew P. Carlin, for the purpose of securing to plaintiff or its assignor, its successors and assigns, the sum of $200,000.00, duly made a certain bond, note, loan agreement, extension agreement, consolidation agreement, or recasting agreement, as the case may be, wherein and whereby they bound themselves, their heirs, executors, administrators and assigns, and each and every one of them, jointly and severally, in the amount of said sum of money, all as more fully appears together with the terms of repayment of said sum or rights of the plaintiff in said bond, note or other instrument. A copy of said instrument, or an affidavit regarding same, is attached hereto and made a part hereof.

**FIFTH**: That as security for the payment of said indebtedness, a mortgage was executed, acknowledged and delivered to the plaintiff or its assignor, whereby the mortgagor or mortgagors therein named, bargained, granted and sold to the mortgagee named therein, its successors and assigns, the premises more particularly described therein (hereinafter called "mortgaged premises"), under certain conditions with rights, duties and privileges between or among them as more fully appears in said mortgage, a copy of which is attached hereto and made a part hereof.

**SIXTH**: That the said mortgage was duly recorded (and the mortgage tax due thereon was duly paid) in the proper County Clerk's Office at the place and time which appears thereon.

**SEVENTH**: That the defendant(s), so named, have failed and neglected to comply with the terms and provisions of said mortgage, bond/note/loan agreement, and said instrument(s) secured by said mortgage by omitting and failing to pay items of principal and interest or taxes, assessments, water rates, insurance premiums, escrow and/or other charges, all as more fully appears in **Schedule C** and accordingly the plaintiff hereby elects to call due the entire amount secured by the mortgage described in paragraph FIFTH hereof. The default has continued beyond the applicable grace period set forth in the mortgage, and by reason thereof, plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

**EIGHTH**: That Schedule C sets forth the principal balance due and the date (and rate) from which interest accrued and all other items and charges arising from said default which are now due.

**NINTH**: That in order to protect its security, the Plaintiff has paid, if set forth in Schedule C, or may be compelled to pay during the pendency of this action local, taxes, assessments, water rates, insurance premiums, inspections and other charges affecting the mortgaged premises, and the plaintiff requests that any sums thus paid by it for said purposes (together with interest thereon), should be added to the sum otherwise due and be deemed secured by the said mortgage and be adjudged a valid lien on the mortgaged premises.

**TENTH**: That each of the above-named defendants has, or claims to have, some interest in, or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of plaintiff's mortgage.

**ELEVENTH**: That the plaintiff is now the sole, true and lawful holder of the said bond/note/loan agreement and mortgage securing the same and there are no pending proceedings at law or otherwise to collect or enforce said bond/note and mortgage. Copies of Assignment(s) of Mortgage, if any, are attached hereto and made a part hereof.

**TWELFTH**: That Schedules, Exhibits and other items attached to this Complaint are expressly incorporated and made a part of the Complaint for all purposes with the same force and effect as if they were completely and fully set forth herein wherever reference has been made to each or any of them.

**THIRTEENTH**: That by reason of the foregoing, there is now due and owing to the plaintiff upon said bond, note, loan agreement, assumption agreement, extension agreement or consolidation agreement the amount set forth in **Schedule C**.

**FOURTEENTH**: That if the security for the indebtedness consists of more than one parcel, plaintiff respectfully requests that the judgment of foreclosure provide for the sale of the parcels in a particular order to the extent necessary to satisfy the indebtedness or that if the mortgage so states, the mortgaged premises may be sold in one parcel.

**FIFTEENTH**: The plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of the payment or performance, after the date of the commencement of this action, of any or all of the defaults mentioned herein; and such election shall continue and remain effective until the costs and disbursements of this action, and

all present and future defaults under the note and mortgage and occurring prior to the discontinuance of this action are fully paid and cured.

SIXTEENTH:  Pursuant to the Fair Debt Collection Practices Act, this action may be deemed to be an attempt to collect a debt on behalf of the plaintiff.  Any information obtained as a result of this action will be used for that purpose.

SEVENTEENTH:  At the time this proceeding is commenced, the plaintiff is the owner and holder of the subject mortgage and note, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note.

EIGHTEENTH:  If applicable, Plaintiff has complied with all of the provisions of section five hundred ninety-five-a of the banking law and any rules and regulations promulgated thereunder, section six-l or six-m of the banking law, section thirteen hundred four of the real property actions and proceedings law, and HAMP Supplemental Directive 10-02.

NINETEENTH:  Plaintiff has complied with all of the provisions pursuant to RPAPL §§ 1304 and 1306.

WHEREFORE, plaintiff demands judgment:

1.      Adjudging and decreeing the amounts due the plaintiff for principal, interest, costs and reasonable attorney's fees, if provided for in the said bond/note/loan agreement or mortgage; and

2.      That the defendant(s) and all persons claiming by, through or under them, or either or any of them, subsequent to the commencement of this action and every other person or corporation whose right, title, conveyance or encumbrance is subsequent to or subsequently recorded, may be barred and forever foreclosed of all right, claim, lien, interest or equity of redemption in and to said mortgaged premises;

3.      That the said mortgaged premises, or such part thereof as may be necessary to raise the amounts due for principal, interest, costs, reasonable attorney's fees, allowances and disbursements, together with any monies advanced and paid, may be decreed to be sold according to law;

4.      That out of the monies arising from the sale thereof, the plaintiff may be paid the amounts due on said bond/note/loan agreement and mortgage and any sum which may have been paid by the plaintiff to protect the lien of plaintiff's mortgage as herein set forth, with interest

upon said amounts from the dates of the respective payments and advances thereof, the costs and expenses of this action, additional allowance, if any, and reasonable attorney's fees, if provided for in said bond, note, loan agreement or mortgage, so far as the amount of such money properly applicable thereto will pay the same;

    5.    The premises are being sold subject to:

    (a) All common charges, if any, which are at the time a lien on the premises, together with such interest or penalties as may have lawfully accrued thereon to the date of payment;

    (b) Covenants, restrictions and easements of record and zoning regulations and ordinances of the City, Town and Village in which said premises lie;

    (c) Rights of the public and others in and to any part of the mortgaged premises that lies within the bounds of any street, alley or highway;

    (d) Any state of facts that an accurate survey, currently dated, might disclose;

    (e) Any state of facts an inspection would disclose, it being understood that the property is sold in an "as is" and "where is" condition;

    (f) Any and all tenancies, possessory interests and/or leases affecting said premises which are not extinguished by this foreclosure action;

    (g) The right of redemption of the United States of America, if any;

    6.    That if the proceeds of said sale of the mortgaged premises aforesaid be insufficient to pay the amount found due to the plaintiff with interest and costs, the officer making the sale be required to specify the amount of such deficiency in his report of sale so that plaintiff may thereafter be able to make application to this Court, pursuant to Section 1371 of the Real Property Actions and Proceedings Law, for a judgment against the defendant(s) referred to in paragraph FOURTH of this Complaint for any deficiency which may remain after applying all of such moneys so applicable thereto, except that this shall not apply to any defendant who has been discharged in bankruptcy from the subject debt;

    7.    That either or any of the parties to this action may become a purchaser upon such sale;

    8.    That this Court, if requested, forthwith appoint a Receiver of the rents and profits of said premises with the usual powers and duties;

9.    That the plaintiff may have such other or further relief, or both, as may be just and equitable.

Plaintiff specifically reserves its right to share in any surplus monies arising from the sale of subject premises by virtue of its position as a judgment or other lien creditor excluding the mortgage being foreclosed herein;

DATED:  June 18, 2013
          Rochester, New York

BY:  _____
      Erinn K. Prestidge, Esq.
      DAVIDSON FINK LLP
      Attorneys for Plaintiff
      Foreclosure Department
      28 East Main Street, Suite 1700
      Rochester, New York 14614
      Tel: (585) 760-8218

**VERIFICATION**
(Complaint)

I affirm under penalty of perjury: That I am the attorney for Plaintiff, having an office at 28 East Main Street, Suite 1700, Rochester, New York, 14614, in the within action; that I have read the foregoing Summons and Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters I believe them to be true. That the grounds of my belief as to all matters in the Complaint not stated to be upon knowledge are based upon the original bond/note/loan agreement, mortgage and/or financial statements, together with correspondence. I further state that the reason this verification is made by Affirmant and not an officer of Plaintiff's corporation is that Plaintiff is either a foreign corporation, or its principal place of business is not in the county where I have my office.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

_____
Erinn K. Prestidge, Esq.

STATE OF NEW YORK   )
COUNTY OF MONROE   ) ss:

On ___June 18, 2013___, before me, the undersigned, a Notary Public in and for said state, personally appeared Erinn K. Prestidge, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

ALISSA L. WILSON
Notary Public, State of New York
No. 02WI6203217
Qualified in Monroe County
My Commission Expires 04/27/20__

### NOTICE REQUIRED BY THE FAIR DEBT
### COLLECTION PRACTICES ACT
### (THE ACT), 15 U.S.C. SECTION 1601 AS AMENDED

1.   THE AMOUNT OF THE DEBT IS STATED IN THE COMPLAINT HERETO ATTACHED.

2.   THE PLAINTIFF AS NAMED IN THE ATTACHED SUMMONS AND COMPLAINT IS THE CREDITOR TO WHOM THE DEBT IS OWED.

3.   THE DEBT DESCRIBED IN THE COMPLAINT ATTACHED HERETO WILL BE ASSUMED TO BE VALID BY THE CREDITOR'S LAW FIRM, UNLESS THE DEBTOR, WITHIN THIRTY (30) DAYS AFTER THE RECEIPT OF THIS NOTICE, DISPUTES THE VALIDITY OF THE DEBT OR SOME PORTION THEREOF.

4.   IF THE DEBTOR NOTIFIES THE CREDITOR'S LAW FIRM WITHIN THIRTY (30) DAYS OF THE RECEIPT OF THIS NOTICE THAT THE DEBT OR ANY PORTION THEREOF IS DISPUTED, THE CREDITOR'S LAW FIRM WILL OBTAIN A VERIFICATION OF THE DEBT AND A COPY OF THE VERIFICATION WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

5.   IF THE CREDITOR NAMED AS PLAINTIFF IN THE ATTACHED SUMMONS AND COMPLAINT IS NOT THE ORIGINAL CREDITOR, AND IF THE DEBTOR MAKES A REQUEST TO THE CREDITOR'S LAW FIRM WITHIN THE THIRTY (30) DAYS FROM THE RECEIPT OF THIS NOTICE, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

6.   REQUESTS SHOULD BE ADDRESSED TO DAVIDSON FINK LLP, 28 EAST MAIN STREET, 1700 FIRST FEDERAL PLAZA, ROCHESTER, NEW YORK 14614, (585) 760-8218.

7.   THE ABOVE-REFERENCED THIRTY (30) DAYS TIME PERIOD IN WHICH THE DEBTOR MAY DISPUTE THIS DEBT SHALL IN NO WAY AMEND OR EXTEND SAID DEBTOR'S STATUTORY TIME PERIOD, AS STATED IN THE ATTACHED SUMMONS, TO INTERPOSE AN ANSWER TO THE COMPLAINT IN THIS MATTER.

## Schedule A-Defendants

ANDREW P. CARLIN

Record owner and original mortgagor of premises being foreclosed herein by virtue of a deed recorded on May 3, 1990 in the Nassau County Clerk's Office in Deed: 10064 Page: 435 and the party liable for payment of the note and mortgage herein.

CITIBANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE BEAR STEARNS SECOND LIEN TRUST 2007-1, MORTGAGE-BACKED NOTES, SERIES 2007-1
1800 Tapo Canyon Road
Simi Valley, CA 93063

Subordinate Mortgagee by virtue of Mortgage recorded on September 29, 2006 in Liber Book M 31037, page 929, as assigned in Liber Book M 37930, page 539.

"JOHN DOE" and "MARY DOE"

Said names being fictitious, it being the intention of plaintiff to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein.

**Schedule B-Defendants**

None

## Schedule C

1.  Original Loan Amount ................................................................$200,000.00

2.  Mortgage Origination Date ...........................................April 15, 2005

3   Principal Balance Owing ..............................................$179,005.01

4   Default Date .........................................................February 1, 2012

5   Monthly Payment Amount(Principal and Interest) .........................$970.42

6   Interest Rate...........................................................2.000%*

7.  Interest from .....................................................January 1, 2012

8.  Late Charges to Date....................................................$0.00

*Interest will continue to accrue at the contract bond/note/loan agreement rate, until a Judgment of Foreclosure and Sale has been entered in the proper County Clerk's Office, at which time the interest rate will be calculated at the legal rate of 9.00%.

Servicing #: ▓▓▓▓6278

**NOTE**

CARLIN
Loan #:  ▓▓▓6278
Mers #:  ▓▓▓▓▓2787

April 15, 2005
[Date]

WILLISTON PARK
[City]

New York
[State]

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 200,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WMC MORTGAGE CORP.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.675 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on June 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2020, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 6501 IRVINE CENTER DRIVE, IRVINE, CA 92618 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,873.97

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mac/Freddie Mac-UNIFORM INSTRUMENT
DOCUSIS
PHKECFR1.VTN  9/10/2002
(1 of 3 pages)

Form 3133 1/01

 
## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15
calendar days after the date it is due, I will pay a late charge to the Note Holder. This amount of the charge will be
2.000       % of my overdue payment of principal and interest. I will pay this late charge promptly but only
once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue
amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which
has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on
which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as
described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will
have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not
prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will
be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different
address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by
mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address
if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the
promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor,
surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations,
including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises
made in this Note. The Note Holder may enforce its rights under this Note against each person individually or
against all of us together. This means that any one of us may be required to pay all of the amounts owed under this
Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of
Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of
Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not
been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the
protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I
do not keep the promises which I make in this Note. That Security Instrument describes how and under what
conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of
those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if
all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior
written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or
transferred without Lender's prior written permission, Lender also may require immediate payment in full.
However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3233 1/01
DOCUCTB1
WXDDCTG1.VFX 10/16/2002                              (2 of 3 pages)



If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  4|15|05
- Borrower -  ANDREW P CARLIN  - Date -

Pay to the order of

without recourse.

Melba Fercone, Asst. Sec't.
WMC Mortgage Corp.



*[Sign Original Only]*

610   070715144   N   001   001

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3233 1/01
DOCUFID                                                    (3 of 3 pages)
WKDCFID.VFX   10/16/2002





**NASSAU COUNTY CLERK'S OFFICE**
**ENDORSEMENT COVER PAGE**

Recorded Date: 04-29-2005
Recorded Time: 12:42:53 p

Liber Book: M 28742
Pages From: 853
To: 869

Control
Number: 3033
Ref #: CW 009848
Doc Type: M01 MORTGAGE

Record and Return To:
WMC MORTGAGE CORP
POST CLOSING
1 RAMLAND RD
ATTN EQUITY SERVICES
ORANGEBURG, NY 10962

| Location: | Section | Block | Lot | Unit |
|---|---|---|---|---|
| OYSTER BAY (2824) | 0021 | 00149-00 | 00694 | |
| OYSTER BAY (2824) | 0021 | 00149-00 | 00741 | |

Consideration Amount: 200,000.00

KAV001

Taxes Total 1,975.00
Recording Totals 86.00
Total Payment 2,061.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
KAREN V. MURPHY
COUNTY CLERK


2005042903033

When Recorded Mail To:
WMC MORTGAGE CORP. - POST
CLOSING
1 RAMLAND RD

ORANGEBURG, NY 10962
Attn:     (Equity Services)

Prepared By:
TRACEY CARTER
WMC MORTGAGE CORP.

Boundary Title Services Inc.
69 East Jericho Tpkd.
Mineola, N.Y. 11501
(030)

3220 OMEGA AVENUE 10TH FL
(BALLROOM)
WOODLAND HILLS, CA 91367

[Space Above This Line For Recording Data]

MIN #: 11126376

**MORTGAGE**

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated   April 15, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." ANDREW P CARLEN

11579
, whose address is

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender." WMC MORTGAGE CORP.

will be called "Lender."  Lender is a corporation or association
which exists under the laws of  CALIFORNIA            . Lender's address is  P.O. BOX
54089 LOS ANGELES, CA 90054-0089
(E) "Note." The note signed by Borrower and dated   April 15, 2005         will be called the "Note."
The Note shows that I owe Lender
Two Hundred Thousand And 00/100
Dollars (U.S.$   200,000.00            ) plus interest and other amounts that may be payable. I
have promised to pay this debt in Periodic Payments and to pay the debt in full by May 1, 2025
(F) "Property." The property that is described below in the section titled "Description of the Property," will be
called the "Property."
(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."

PREMISES IS OR WILL BE IMPROVED
BY A ONE OR TWO FAMILY DWELLING

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
W/MERS
*0039913.w08 02/02/2005*
(Page 1 of 15 pages)                                           Form 3033 1/01

Title #___2395

## SCHEDULE A

All that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Incorporated Village of Sea Cliff, in the Town of Oyster Bay, County of Nassau and State of New York, known and designated as and by the Lot Nos. 694 and 741 on a certain map entitled, "Map of Sea Cliff Grove and Metropolitan Campo Ground Association of New York and Brooklyn, surveyed by John H. Perry, Engineer, December 8, 1871" and filed August 31, 1880 in the Office of the Clerk of the County of Queens as Map No. 436, and subsequently filed in the Office of the Clerk of Nassau County as Map No. 99 Case No. 1080

Dist:  Sect.: 21      Block: 149     Lot: 694 & 741

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders."
The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☐ 1-4 Family Rider       ☐ Other(s) [specify]

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance Proceeds, as defined in, and paid under the coverages described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant, and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                  Form 3033 1/01
SECURED
WOBMF1.FM 01/01/0045                 (Page 2 of 13 pages)

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:
(A) The Property which is located at

SEA CLIFF

[Street]
, New York

[City, Town or Village]
This Property is in NASSAU
description:

[Zip Code]
County. It has the following legal

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS EXHIBIT 'A'.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
(Page 3 of 13 pages)
Form 3033 1/01

made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that it may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due to Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.
(a) Borrower's Obligations. I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance; or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);
(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
(4) The premium for Mortgage Insurance (if any);
(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUMENT.VB3  03/02/2001
(Page 4 of 13 pages)

Form 3033 1/01

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be

imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section A.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.  Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not

economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available Insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the Insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all Insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.   Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a)  Maintenance and Protection of the Property. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the Insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b)  Lender's Inspection of Property. Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8.   Borrower's Loan Application. If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3033 1/01
3033NY.vtl 01/05/2001                                              (Page 7 of 15 pages)

9. Lender's Right to Protect Its Rights in The Property. If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to: eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or amend that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain those payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUMENT
NMLSWQ9_V02   02/01/3450
(Page 8 of 13 pages)

Form 3033 1/01

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage Insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds: Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to

require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

11. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations. Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights. Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

12. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. Loan Charges. Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3033 1/01
MOODROYD
Ver. 01/03/1006          (Page 18 of 13 pages)

prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15.** Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.** Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.** Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

**18.** Agreements about Lender's Rights if the Property Is Sold or Transferred. Lender may require immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19.** Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                     Form 3033 1/01
DOCUMENT
DOCUMENT.VTX  03/23/2005                                  (Page 11 of 13 pages)

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, than this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing material if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3033 1/01
DOCTRINATY
(Page 13 of 15 pages)
DOCUMENT, VER 02/10/2006

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

  (a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

  (b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

    (1) The promise or agreement that I failed to keep or the default that has occurred;

    (2) The action that I must take to correct that default;

    (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

    (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

    (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

    (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

  (c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3033 1/01
DOCDOYYD
DOCUSIGN.VTB   03/03/2011      (Page 13 of 13 pages)

6778
6779

amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 13 of this Security Instrument and in any Rider signed by me and recorded with it.

4/15/05

BORROWER - ANDREW F CARLSON - Date -

1112527#

[Space Below This Line For Acknowledgment]                                    1112527#

STATE OF New York                          County of Nassau

On the     15th     day of  April         in the year 2005  before me, the undersigned,
a notary public in and for said state, personally appeared

Andrew P. Carlin

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is (are) subscribed to the within instrument and acknowledged to me that  HE   executed the same in
HIS   capacity(ies), and that by  HIS  signature(s) on the instrument, the individual(s) or the person upon
behalf of which the individual(s) acted, executed the instrument.

Notary Public

PAUL PATACCA
Notary Public, State of New York
No. 0XXACX07227
Qualified in Nassau County
Commission Expires June 28, 20, 47

LEGIBILITY POOR
FOR MICROFILM

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
000000YU
000000YY .V01  01/01/0000                        (Page 15 of 15 pages)                        Form 3033 1/01



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 09-18-2012
Recorded Time: 11:52:17 a

   Liber Book: M  37720
   Pages From:        165
          To:        167

Record and Return To:
REVERSE MORTGAGE SOLUTIONS INC
2727 SPRING CREEK DR
SPRING, TX  77373

     Control
     Number:   1056
     Ref #:
     Doc Type: M23  ASSIGN MORTGAGE

   Refers to: Book: M 28742 Page: 853

| Location: | Section | Block | Lot | Unit |
|---|---|---|---|---|
| OYSTER BAY (2824) | 0021 | 00149-00 | 00694 | |
| OYSTER BAY (2824) | 0021 | 00149-00 | 00741 | |

| | |
|---|---|
| Taxes Total | .00 |
| Recording Totals | 130.00 |
| Total Payment | 130.00 |

CLM001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK


201209180105L


Recording Requested By:
Bank of America

Prepared By: Bank of America

When recorded mail to:
Reverse Mortgage Solutions, Inc.
2727 Spring Creek Drive
Spring, TX 77373

DocID#   111797151031994..

Property Address:

Sea. CRE, NY

Property Location:
Township of OYSTER BAY

## ASSIGNMENT OF MORTGAGE

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WMC MORTGAGE CORP., the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 did where address is PO BOX 2026, LOS ANGELES, CA 90051-0001 hereby grant, sell, assign, transfer and convey unto DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC., TRUST M#2-MX2, MORTGAGE   PASS-THROUGH CERTIFICATES, SERIES 2005-HE3 whose address is 3901 OLD ANNAPOLIS RD, COLUMBIA, MD 21045 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security Instrument.

Original Lender:          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
                          NOMINEE FOR WMC MORTGAGE CORP.
Made By:                  ANDREW F CARLIN
Date of Mortgage:         07/2/2005
Original Loan Amount:     $265,000.00
Section: 21   Lot: 694 & 741    Block: 1@    Unit: NA

Recorded in Nassau County, NY on 4/25/2005, book M 29742, page 803 and instrument number         023

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Date:
5-5-2012

\* 1 Romland Rd.
Orange burg, NY
10962
©

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR WMC
MORTGAGE CORP.

By:  Aaron Hawkas
     Aaron Hawkas
     Assistant Secretary

State of California
County of Ventura

On **MAY 09 2012** before me, **Cynthia R. Goldbeck**, Notary Public, personally appeared **Aaron Hawkes**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public _Cynthia Goldbeck_
My Commission Expires: 9-8-12

CYNTHIA R. GOLDBECK
Commission # 1846744
Notary Public - California
Los Angeles County
My Comm. Expires July 8, 2012

# APPENDIX B



ANDREW P. CARLIN

**RECEIVED**

JUL 15 2013

July 12, 2013

<u>**VIA CERTIFIED MAIL-RETURN RECEIPT REQUESTED**</u>
Erinn K. Prestidge, Esq.
Davidson Fink LLP
28 East Main Street, Suite 1700
Rochester, New York 14614-1918

        Re:   Deutsche Bank National Trust Company as Trustee v. Andrew P. Carlin
              <u>State of New York, Supreme Court, County of Nassau, Index No  13-007648</u>
Dear Ms. Prestidge:

I am in receipt of the Notice Required by the Fair Debt Collection Practices Act. I enclose a copy.

1.      I Dispute the Validity of all portions of the Deutsche Bank National Trust Company
as Trustee for the Holders of Morgan Stanley ABS Capital I Inc., Trust 2005-HE3, Mortgage
Pass-Through Certificates, Series 2005-HE3, debt.

2.      Specifically, I Dispute the claim that my Creditor is Deutsche Bank National Trust
Company as Trustee for the Holders of Morgan Stanley ABS Capital I Inc., Trust 2005-HE3,
Mortgage Pass-Through Certificates, Series 2005-HE3.

3.      Please send me Verification that my Creditor is Deutsche Bank National Trust Company
as Trustee for the Holders of Morgan Stanley ABS Capital I Inc., Trust 2005-HE3, Mortgage
Pass-Through Certificates, Series 2005-HE3.

4.      Please send me Verification of this Disputed debt.

5.      Please send me Verification of the dollar amount of the purported debt.

6.      Please send me the Name of the Original Creditor.

7.      Please send me the Address of the Original Creditor.

Thank You,

Andrew P. Carlin

**NOTICE REQUIRED BY THE FAIR DEBT
COLLECTION PRACTICES ACT
(THE ACT), 15 U.S.C. SECTION 1601 AS AMENDED**

1.  THE AMOUNT OF THE DEBT IS STATED IN THE COMPLAINT HERETO ATTACHED.

2.  THE PLAINTIFF AS NAMED IN THE ATTACHED SUMMONS AND COMPLAINT IS THE CREDITOR TO WHOM THE DEBT IS OWED.

3.  THE DEBT DESCRIBED IN THE COMPLAINT ATTACHED HERETO WILL BE ASSUMED TO BE VALID BY THE CREDITOR'S LAW FIRM, UNLESS THE DEBTOR, WITHIN THIRTY (30) DAYS AFTER THE RECEIPT OF THIS NOTICE, DISPUTES THE VALIDITY OF THE DEBT OR SOME PORTION THEREOF.

4.  IF THE DEBTOR NOTIFIES THE CREDITOR'S LAW FIRM WITHIN THIRTY (30) DAYS OF THE RECEIPT OF THIS NOTICE THAT THE DEBT OR ANY PORTION THEREOF IS DISPUTED, THE CREDITOR'S LAW FIRM WILL OBTAIN A VERIFICATION OF THE DEBT AND A COPY OF THE VERIFICATION WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

5.  IF THE CREDITOR NAMED AS PLAINTIFF IN THE ATTACHED SUMMONS AND COMPLAINT IS NOT THE ORIGINAL CREDITOR, AND IF THE DEBTOR MAKES A REQUEST TO THE CREDITOR'S LAW FIRM WITHIN THE THIRTY (30) DAYS FROM THE RECEIPT OF THIS NOTICE, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

6.  REQUESTS SHOULD BE ADDRESSED TO DAVIDSON FINK LLP, 28 EAST MAIN STREET, 1700 FIRST FEDERAL PLAZA, ROCHESTER, NEW YORK 14614, (585) 760-8218.

7.  THE ABOVE-REFERENCED THIRTY (30) DAYS TIME PERIOD IN WHICH THE DEBTOR MAY DISPUTE THIS DEBT SHALL IN NO WAY AMEND OR EXTEND SAID DEBTOR'S STATUTORY TIME PERIOD, AS STATED IN THE ATTACHED SUMMONS, TO INTERPOSE AN ANSWER TO THE COMPLAINT IN THIS MATTER.



ERINN K PRESTIDGE ESQ
DAVIS ON FINK LLP
25 EAST MAIN ST STE 1700
ROCHESTER NY 14614-1918

RECEIVED
JUL 1 5 2013

# APPENDIX C

**DAVIDSON FINK LLP**
Attorneys and Counselors at Law
28 East Main Street, Suite 1700
Rochester, New York 14614-1990
Tel: (585) 760-8218
Fax: (585) 546-8125

August 09, 2013

Andrew Carlin

RE:   DEUTSCHE BANK NATIONAL TRUST COMPANY vs. CARLIN, ANDREW
      Premises:
      Index No.:        7648

Dear Mr. Carlin;

Pursuant to your Debt Validation Request in connection with the above-referenced foreclosure action, the following information has been provided:

1. Your original Request
2. Pay off statement
3. Endorsed Note
4. Mortgage
5. Assignments of Mortgage
6. Payment History

The current loan servicer is Bank of America, N.A.

Should you have any questions with regard to the foregoing, please do not hesitate to contact our office.

Very truly yours,

DAVIDSON FINK LLP

Larry T. Powell, Esq.,

Enclosure(s)

**FDCPA NOTICE:**

**PLEASE BE ADVISED THAT DAVIDSON FINK LLP IS A LAW FIRM ACTING AS A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**

C3_3547 S310L1 18097 04/23/2013

2

**Bank of America**

Home Loans

Payoff Department, Mail Stop NC4-105-01-40
4161 Piedmont Pkwy
Greensboro, NC 27410-8110

ALICIA GULLO

60860

**PAYOFF STATEMENT**

| Good Through Date and/or |
| Proposed Closing Date |
| **August 14, 2013** |

| Statement Date |
| July 31, 2013 |

| Bank of America, N.A. |
| Loan No.:          144-5 |

Name & Property Address:
Andrew P Carlin

Escrow #          74811
Faxed to:          7259

## This loan is in Foreclosure.

The expiration of this demand is the sooner of the above Void After date or the foreclosure sale date.

(B&C ARMBLN)

| PAYOFF | Principal Balance as of 01/01/2012 | $179,005.01 |
| CALCULATION | Interest from 01/01/2012 to 08/14/2013 | 5,796.26 |
| | County Recording Fee | 55.50 |
| | Other Amounts Due | 607.20 |
| | Additional Fees and Costs | 3,958.50 |
| | Escrow Balance Due | 15,829.32 |
| | Total Amount Required to Release Lien (As of August 14, 2013) | **$205,281.79** |
| | Return Item Fee - Due From Borrower | 20.00 |
| **Total Amount Due** | | **$205,281.79** |

Amended Payoff Statements are sent automatically if the total due increases before AUGUST 14, 2013.

To provide you with the convenience of an extended "Statement Void After" date, the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the "Statement Void After" date, but which are not yet due as of the date this Payoff Statement is issued. You will receive a refund if you pay the Total Amount Due and those anticipated fees, expenses, or payments have not been incurred.

**INTEREST CALCULATIONS**

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.

Adjustable rate mortgage loans may have more than one interest rate in effect during the period in which this demand statement applies. Amended demand statements are sent automatically if the total amount due increases before August 14, 2013.

| Daily Interest¹ | From | To | Interest Rate |
|---|---|---|---|
| 9.8084 | 08/01/2013 | 08/14/2013 | 2.0000 |

¹Daily Interest = Principal Balance x Interest Rate ÷ 365

**PAYOFF INSTRUCTIONS**

Payoff funds must be made payable to Bank of America, N.A. and will be accepted by wire or certified funds only. They must reference the Bank of America, N.A. loan number, property address and borrower's name in the Originator Beneficiary Information (OBI) field of the wire transfer or on the face of the check and must be sent per the instructions below. Failure to do so may cause delays resulting in additional interest due or the return of the funds to the remitter. Funds received after 4:00 p.m. Eastern Time may be posted the following business day.

Wire Funds to:
Beneficiary Bank: Bank of America
ABA Routing #: 0260-0959-3
Beneficiary Acct Name: MRC
MRC Account 812356-19173
Reference: Andrew P Carlin
Loan Number: 70715144-5

Mail Certified Funds to:
Bank of America, N.A.
Attention: Payoff Department, Mail Stop NC4-105-01-40
4161 Piedmont Pkwy
Greensboro, NC 27410-8110

Please do not send certified funds to the wire funds instructions above as certified funds must be processed in our Payoff Department.

Please call 1-800-669-5333 for updated payoff information within 24 hours of submitting funds.

Bank of America, N.A. is required by law to inform you that it is a debt collector. If you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt or demand a payment. If you are represented by an attorney, please provide this notice to your attorney.

See following page for important information.

| Bank of America, N.A.<br>Loan No: ████144-5 | Statement Date:<br>July 31, 2013 | Statement Void After:<br>August 14, 2013 |
|---|---|---|

The following escrow items may be disbursed prior to our receipt of payoff funds:

| ESCROW<br>ACCOUNT<br>INFORMATION | Escrow Item | Last Pmt Date | Last Pmt Amt | Next Due Date |
|---|---|---|---|---|
| | School Tax | 04/10/2013 | 1,998.77 | 10/01/2013 |
| | City Tax | 05/10/2013 | 826.69 | 12/01/2013 |
| | City Tax | 07/11/2013 | 792.96 | 01/01/2014 |
| | Hzd:Travelers Indemnity CO | 07/02/2013 | 2,148.00 | 07/19/2014 |

**PAYOFF OVERAGES**

If Bank of America, N.A. receives funds greater than the amount required to pay off your loan, we will automatically process the overage within 14 days after payoff and return the excess amount to you. If an address change is being submitted on behalf of the borrower, the form must be signed by the borrower for the address change to take effect.

**BANKRUPTCY DISCHARGE**

If you have received a discharge of this debt in a bankruptcy, you have no personal obligation to repay this debt. However, the lender may still foreclose on your property if the debt is not paid as required by the loan documents. This payoff statement is provided at your request and for your convenience. This is not an attempt to collect a debt that has been discharged, nor a demand for payment.

**HOMESAVER ADVANCE (HSA) NOTES**

For borrowers with a HomeSaver (HSA) Note, please refer to these specific disclosures:
* The HSA note is due and payable in full in the event of a sale or transfer of ownership of the property;
* Payoff of the HSA note is not required to release the first-lien mortgage loan; and
* The HSA note must continue to be paid in the event of a refinance.

**ADDITIONAL INFORMATION**

The payoff amount indicated in this statement is subject to change for various reasons, including but not limited to the following:

* We may not have posted a recently submitted payment; (Please do not place a stop payment on any check.)
* A fee may be assessed if a payment is returned unpaid by your financial institution for any reason;
* Additional or anticipated fees and costs may be incurred relating to collection, foreclosure, bankruptcy, or other defaults on your loan;
* Adjustments may be required to reflect disbursements made by, or payments owed to, your prior lender if the servicing of your loan was transferred to Bank of America, N.A.;
* Late charges may be assessed for delinquent payments received after: 08/16/2013;
* Funds may be deducted from your escrow account to pay taxes, insurance or other escrow items that become due.

Automated Payoff Request Line: 1-800-669-6833                                                     Fax: 1-866-835-8714

Nota: Si necesita la información incluida en la Demanda de Liquidación traducida al español, por favor comuníquese con nuestro Departamento de Servicio al Cliente al 1-800-669-6807.