**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
ANDREW CARLIN,                                    :
individually and on behalf of a class,            :
                                                  :        2:13-cv-06062-JS-GRB
                        Plaintiff,                :
                                                  :
            v.                                    :
                                                  :
DAVIDSON FINK LLP,                                :
                                                  :
                        Defendant.                :
-----------------------------------------------------------------x
```

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Cathleen M. Combs
Tiffany N. Hardy
EDELMAN, COMBS,
        LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (fax)
akleinman@kleinmanllc.com

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................ 1

II.   STATEMENT OF FACTS .................................................. 1

III.  THE FDCPA APPLIES TO ATTEMPTS TO COLLECT
      RESIDENTIAL MORTGAGE DEBTS ....................................... 4

IV.   DAVIDSON FINK, BY PROVIDING A §1692g NOTICE, ENGAGED
      IN A COMMUNICATION WITH A CONSUMER AND WAS
      REQUIRED TO COMPLY WITH §1692g ................................... 10

      1.    A validation notice is an attempt to collect a debt and
            must comply with §1692g ....................................... 11

      2.    Mr. Carlin's inquiry in response to the invitation extended by the
            §1692g notice is a "communication with a consumer" ................... 13

      3.    Cmplt., Appendix C is also a "communication with a consumer" .......... 17

V.    DAVIDSON FINK DID NOT COMPLY WITH §1692g ....................... 17

VI.   CONCLUSION ........................................................ 20

i

**TABLE OF AUTHORITIES**

*Cases*

*Akalwadi v. Risk Management Alternatives, Inc.*, 336 F.Supp.2d
    492, 503 and n.4 (D. Md. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . 5

*Bernstein v. Howe*, IP 02–192–C–K/H, 2003 WL 1702254, *5 (S.D.Ind., March 31, 2003) . . . 19

*Bhalerao v. Illinois Dept. of Financial and Professional Regulations*,
    834 F.Supp.2d 775, 794 (N.D.Ill. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Birster v. American Home Mortgage Servicing, Inc.*, 11-13574, 2012
    U.S. App. LEXIS 14660 (11th Cir., July 18, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Blanks v. Ford Motor Credit*, Civ.A. 3:04-CV-0331, 2005 WL 43981, *3
    (N.D.Tex. Jan. 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 6

*Brown v. Morris*, No. 04-60526, 243 Fed. Appx. 31; 2007 U.S. App.
    LEXIS 15396 (5th Cir., June 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Caires v. JP Morgan Chase Bank, N.A.*, 880 F.Supp.2d 288 (D.Conn. 2012) . . . . . . . . . . . . . 13

*Castro v. Green Tree Servicing LLC*, No. 10–CV–7211 (ER),
    2013 WL 4105196, *6 (S.D.N.Y., Aug. 14, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Cirkot v. Diversified Financial Systems, Inc.*, 839 F.Supp. 941, 944 (D. Conn. 1993) . . . . . . . . 11

*Davis v. Trans Union, LLC*, 526 F.Supp.2d 577, 586-7 (W.D.N.C. 2007) . . . . . . . . . . . . . . . . . 15

*Derisme v. Hunt Leibert Jacobson P.C.*, 880 F.Supp.2d 339 (D.Conn. 2012) . . . . . . . . . . . . . . 9

*Drennan v. Van Ru Credit Corp.*, 950 F.Supp. 858, 861 (N.D.Ill. 1996) . . . . . . . . . . . . . . . . . . 12

*Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135-137 (2nd Cir. 2010) . . . . . . . . . . . . . . 10

*Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . 11

*Fouche' v. Shapiro & Massey L.L.P.*, 575 F.Supp.2d 776 (S.D.Miss. 2008) . . . . . . . . . . . . . . . 9

*Fritz v. Resurgent Capital Services, LP*, No. 11–CV–3300 FB VVP,
    2013 WL 3821479, *4 (E.D.N.Y. July 24, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 6

*Gibson v. Bob Watson Chevrolet-GEO, Inc.*, 112 F.3d 283, 285-6 (7th Cir. 1997) . . . . . . . . . . 19

*Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Goldman v. Cohen*, 445 F.3d 152, 156-157 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Humes*, 468 B.R. 346 (Bankr. E.D. Ark. 2011), later opinion, 496 B.R. 557
    (Bankr. E.D. Ark. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kandalis v. Rowe*, 14 F.3d 173, 179 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kapsis v. American Home Mortg. Servicing Inc*., 923 F.Supp.2d 430, 440 (E.D.N.Y. 2013) . . 13

*Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lane v. Fein, Such and Crane, LLP*, 767 F.Supp.2d 382 (E.D.N.Y. 2011) . . . . . . . . . . . . . . 15, 16

*Maynard v. Cannon*, 401 F. App'x 389, 394 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McKinney v. Cadleway Props., Inc.*, 548 F.3d 496 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 6

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*,
    214 F.3d 872 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 18, 19

*Nikkel v. Wakefield & Associates, Inc.*, 10cv2411, 2011 WL 4479109
    (D.Colo., Sept. 26, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*O'Brien v. Moores*, 784 F.Supp.2d 1054 (S.D.Ind. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ogbin v. Fein, Such, Kahn & Shepard, P.C.*, 414 Fed.Appx. 456 (3d Cir. 2011) . . . . . . . . . . . 5

*Pettway v. Harmon Law Offices, P.C.,* 03cv10932, 2005 WL 2365331, *5
    (D.Mass., Sept. 27, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17, 19

*Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 233-36 (3d Cir. 2005) . . . . . . . . . . . . . . . . 5

*Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008) . . . . 11

*Rawlinson v. Law Office of William M. Rudow, LLC,* No. 10-2148, 460 Fed. Appx.
    254; 2012 U.S. App. LEXIS 173 (4th Cir. Jan. 5, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012) . . . . . 6

*Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 6

*Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Siwulec v. J.M. Adjustment Services, LLC*, 465 Fed.Appx. 200 (3d Cir. 2012) . . . . . . . . . . . . . 5

iii

*Spencer v. Hendersen-Webb, Inc.*, 81 F.Supp.2d 582, 591 (D.Md. 1999) . . . . . . . . . . . . . . . . . 19

*Sullivan v. Equifax*, CIV.A. 01–4336, 2002 WL 799856, *4,
    2002 U.S. Dist. LEXIS 7884 (E.D. Pa. Apr. 19, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Thomas v. Simpson & Cybak,* 392 F.3d 914, 919-20 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 10

*Tolentino v. Friedman*, 833 F.Supp. 697, 698-99 (N.D.Ill. 1993),
    aff'd in pertinent part, 46 F.3d 645 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Trunzo v. CitiMortgage, Inc.*, 876 F.Supp.2d 521, 545 (W.D.Pa. 2012) . . . . . . . . . . . . . . . . . . 16

*Veach v. Sheeks,* 316 F.3d 690 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Vincent v. Money Store,* 736 F.3d 88 (2nd Cir. Nov. 13, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . 6

*Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) . . . . . . . . . . . . . . . . 5

*Statutes and Other Authorities*

15 USC §1692a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 14, 17

15 USC §1692b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 USC §1692c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 USC §1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15 USC §1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 13, 14, 15

15 USC §1692 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 USC §1692g. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 USC §1692*l* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Financial Services Regulatory Relief Act of 2006, Pub.L. No. 109-351,
    § 802(a), 120 Stat. 1966 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## I.      INTRODUCTION

Defendant Davidson Fink LLP has filed a motion to dismiss which basically contends that it has the right to collect residential mortgage loans without complying with the verification notice requirement of the Fair Debt Collection Practices Act, 15 U.S.C. §1692g ("FDCPA").   Its motion is contrary to controlling Second Circuit authority, which it fails to disclose to the Court.

## II.     STATEMENT OF FACTS

Plaintiff Andrew Carlin  is an individual who resides in Sea Cliff,  New York, in a single family home which he owns.  (Cmplt., ¶4)

Defendant Davidson Fink LLP is a law firm.  (Cmplt., ¶5)   Its practice areas as listed on its web site include "collections" and "foreclosure."   Two attorneys are listed under "collections" and seven under "foreclosure," out of a total of about 24.  (Cmplt., ¶6)

According to the web site, "At Davidson Fink LLP, we provide a wide-range of debt collection services to financial institutions, banks, servicers, credit unions, and various commercial and consumer lending clients. We offer immediate and inexpensive options to recover unpaid funds with a comprehensive collection process which includes negotiating payment plans, judgment execution and enforcement."  (Cmplt., ¶7)

The same web site also states, "At Davidson Fink LLP, our attorneys, paralegals and staff are highly trained in New York State foreclosure proceedings. We combine our expertise, knowledge and experience with the most recent technology and a team-oriented approach to provide timely and cost-effective services. We take an aggressive approach to timeline management and loss mitigation and recognize the need for effective communication and meticulous attention to detail to successfully service our clients."  (Cmplt., ¶8)

Davidson Fink LLP regularly collects consumer debts originally owed to others, including residential mortgage debts,  using the mails and telephone system for that purpose. (Cmplt., ¶9)    Davidson Fink LLP is a debt collector as defined in the FDCPA.  (Cmplt., ¶10)

Davidson Fink LLP has been attempting to collect from plaintiff a residential

mortgage loan obtained for personal, family or household purposes (housing).  (Cmplt., ¶11) The loan was alleged to be in default when Davidson Fink LLP first became involved with it. (Cmplt., ¶12)

On or about June 24, 2013, Davidson Fink LLP filed, on behalf of Deutsche Bank National Trust Company, a foreclosure action against Andrew Carlin in Nassau County Supreme Court.  (Cmplt., ¶13)  Davidson Fink LLP attempted to provide the notice required by 15 U.S.C. §1692g as an attachment to the complaint.  (Cmplt., ¶14)  A copy of the summons, complaint and exhibits is in Cmplt., Appendix A.  The §1692g notice is the 11th page.  (Cmplt., ¶15) The foreclosure complaint specifically requested (Cmplt. Appendix A, ¶6) a deficiency judgment.

Prior to the complaint, Mr. Carlin did not receive any letter or other  communication from Davidson Fink LLP.  On information and belief, none was sent.  (Cmplt., ¶16)

Section 1692g provides:

**§ 1692g.  Validation of debts**

**(a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

2

**(b) Disputed debts.  If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

**(c) Admission of liability.  The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.**

**(d) Legal pleadings.  A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).**

**(e) Notice provisions.  The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.**

The 11th page of Cmplt., <u>Appendix A</u> states that "the amount of the debt is stated in the complaint hereto attached."  (Cmplt., ¶18)  The complaint does not state the present amount of the debt.  Attached to the complaint is a Schedule C which lists the original loan amount and the principal balance owing.  However, the complaint also claims unspecified interest, taxes, assessment, water rates, insurance premiums, escrow "and/or other charges."  (Paragraph "seventh").  (Cmplt., ¶19)

By letter of July 12, 2013, Mr. Carlin disputed the debt (Cmplt., <u>Appendix B</u>).  (Cmplt., ¶20)

More than five days afterwards, by letter of August 9, 2013, Davidson Fink LLP

3

provided additional information about the debt (Cmplt., <u>Appendix C</u> [some exhibits omitted]). (Cmplt., ¶21)  The August 9, 2013  letter enclosed a "payoff statement" which stated an amount of the debt, but also stated that "the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued." (Cmplt., ¶22)

As a result, Davidson Fink LLP did not provide the "amount of the debt" as required by §1692g(a)(1).  *Miller v. McCalla, Raymer,  Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000) (not sufficient to state that unpaid principal balance of residential mortgage loan was $178,844.65, and that this did not include unspecified accrued but unpaid interest, unpaid late charges, escrow advances, and other charges authorized by loan agreement). (Cmplt., ¶23)

It is the policy and practice of Davidson Fink LLP to attempt to comply with §1692g by:

1. Attaching the §1692g notice to the complaint, which is excluded from the definition of "initial communication" under amended §1692g and which in any event does not contain a statement of the "amount of the debt" as required by §1692g(a)(1).

2. Providing a "payoff statement" if the consumer requests the actual amount of the debt, which payoff statement includes unaccrued charges and thus also does not state "the amount of the debt."

(Cmplt., ¶24)

The standard policy and practice employed by Davidson Fink LLP for the  purpose of attempting to comply with 15 U.S.C. §1692g violates 15 U.S.C. §1692g(a)(1), because the consumer is never furnished with a statement of the amount of the debt.  (Cmplt., ¶26)

## III.  THE FDCPA APPLIES TO ATTEMPTS TO COLLECT RESIDENTIAL MORTGAGE DEBTS

Davidson Fink's initial argument is that the FDCPA does not apply to attempts to collect

residential mortgage loans.  Davidson Fink cites isolated district court cases, without disclosing that the Second Circuit has recently applied the FDCPA to attempts to collect residential mortgage debts.  *Vincent v. Money Store,* 736 F.3d 88 (2nd Cir. Nov. 13, 2013).   The court answered in the affirmative the question of whether "the consumer protections of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq., . . . apply to a mortgage lender that has purchased mortgages initially payable to other lenders and, after the homeowners defaulted on their mortgages, hired a law firm to send allegedly deceptive debt collection letters on its behalf."  (736 F.3d at 90)

Significantly, the *Vincent* decision is consistent with the decisions of every other Court of Appeals to have addressed the issue. Not less than seven other Circuits have held that lawyers and others collecting residential mortgage debts are subject to the FDCPA, either generally or unless they neither attempt to collect money nor enforce personal liability (here, both Cmplt., Appendix A and Cmplt., Appendix C sought money):

**Third Circuit:**  *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) (allegedly inflated mortgage payoff statement covered by FDCPA); *Ogbin v. Fein, Such, Kahn & Shepard, P.C.*, 414 Fed.Appx. 456 (3d Cir. 2011) (same); see *Siwulec v. J.M. Adjustment Services, LLC,* 465 Fed.Appx. 200 (3d Cir. 2012) (notices left by mortgage company's field agent); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 233-36 (3d Cir. 2005) (FDCPA applies to collection of overdue water and sewer obligations via lien filed against consumer's house because "the text of the FDCPA evidences a Congressional intent to extend the protection of the Act to consumer defendants in suits brought to enforce liens" and "[t]he fact that the [statute] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt").

**Fourth Circuit:**  *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006); see also *Rawlinson v. Law Office of William M. Rudow, LLC,* No. 10-2148, 460 Fed. Appx. 254; 2012 U.S. App. LEXIS 173 (4th Cir. Jan. 5, 2012) (replevin action is covered by

5

FDCPA).

**Fifth Circuit:** *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006);  *Brown v. Morris*, No. 04-60526, 243 Fed. Appx. 31; 2007 U.S. App. LEXIS 15396 (5th Cir., June 28, 2007).

**Sixth Circuit:**  *Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323 (6th Cir. 2012); *Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013).

**Seventh Circuit:**  *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496 (7th Cir.  2008); *Miller v. McCalla, Raymer,  Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000).

**Tenth Circuit:**  *See Maynard v. Cannon*, 401 F. App'x 389, 394 (10th Cir. 2010).

**Eleventh Circuit**:  *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012);; *Birster v. American Home Mortgage Servicing, Inc.*, 11-13574, 2012 U.S. App. LEXIS 14660  (11th Cir., July 18, 2012); *see Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012).

Accord, *Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo. 1992) (foreclosure lawyers subject to FDCPA).  There are no contrary decisions from any Court of Appeals, and many district courts in the circuits which have not yet ruled are in agreement.  *E.g., Pettway v. Harmon Law Offices, P.C.,* 03cv10932, 2005 WL 2365331, *5 (D.Mass., Sept. 27, 2005).

In *Reese*, the Eleventh Circuit noted that a contrary "rule would create a loophole in the FDCPA.  A big one. In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of §1692e by giving notice of foreclosure on the secured interest. The practical result would be that the Act would apply only to efforts to collect unsecured debts. So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't. A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A 'debt' is still a 'debt'

6

even if it is secured."   (678 F.3d at 1217-18)

Similarly, in *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453 (6th Cir. 2013), the court

held:

> The FDCPA speaks in terms of debt collection. For example, to be liable under the
> statute's substantive provisions, a debt collector's targeted conduct must have been taken
> "in connection with the collection of any debt," e.g., 15 U.S.C. §§1692c(a)-(b), 1692d,
> 1692e, 1692g, or in order "to collect any debt," id. § 1692f. In addition, to be a "debt
> collector" under the Act, one must either (1) have as his or her principal business purpose
> "the collection of any debts" or (2) "regularly collects or attempts to collect, directly or
> indirectly, debts owed or due ... another." Id. § 1692a(6). Despite the Act's pivotal use of
> the concept, however, it does not define debt collection. While the concept may seem
> straightforward enough, confusion has arisen on the question whether mortgage
> foreclosure is debt collection under the Act. We have not addressed the issue. Nor has the
> Consumer Financial Protection Bureau offered an authoritative interpretation on the
> matter. See 15 U.S.C. § 1692l (d). Other courts have taken varying approaches on the
> issue. . . .
>
> As with all matters requiring statutory interpretation, we begin with the text. *United
> States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989). "If the words are plain, they
> give meaning to the act, and it is neither the duty nor the privilege of the courts to enter
> speculative fields in search of a different meaning." *Caminetti v. United States*, 242 U.S.
> 470, 490 (1917).
>
> Unfortunately, the FDCPA does not define "debt collection," and its definition of "debt
> collector" sheds little light, for it speaks in terms of debt collection. See 15 U.S.C.
> §1692a(6); . . . But the statute does offer guideposts. It defines the word "debt," for
> instance, which is "any obligation or alleged obligation of a consumer to pay money
> arising out of a transaction in which the money, property, insurance, or services which
> are the subject of the transaction are primarily for personal, family, or household
> purposes[.]" 15 U.S.C. §1692a(5). The focus on the underlying transaction indicates that
> whether an obligation is a "debt" depends not on whether the obligation is secured, but
> rather upon the purpose for which it was incurred. . . . Accordingly, a home loan is a
> "debt" even if it is secured. . . .
>
> In addition, the Act's substantive provisions indicate that debt collection is performed
> through either "communication," id. § 1692c, "conduct," id. § 1692d, or "means," id. §§
> 1692e, 1692f. These broad words suggest a broad view of what the Act considers
> collection. Nothing in these provisions cabins their applicability to collection efforts not
> legal in nature. Cf. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (holding that "a lawyer
> who 'regularly,' through litigation, tries to collect consumer debts" is a "debt collector"
> under the Act). Foreclosure's legal nature, therefore, does not prevent if from being debt
> collection.
>
> Furthermore, in the words of one law dictionary: "To collect a debt or claim is to obtain
> payment or liquidation of it, either by personal solicitation or legal proceedings." *Black's
> Law Dictionary* 263 (6th ed.1990). The Supreme Court relied on this passage when it
> declared the following in a case concerning the Act's definition of "debt collector": "In
> ordinary English, a lawyer who regularly tries to obtain payment of consumer debts
> through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those

7

consumer debts." *Heintz*, 514 U.S. at 294 (emphasis added). Thus, if a purpose of an activity taken in relation to a debt is to "obtain payment" of the debt, the activity is properly considered debt collection. Nothing in this approach prevents mortgage foreclosure activity from constituting debt collection under the Act. . . .  In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt). As one commentator has observed, the existence of redemption rights and the potential for deficiency judgments demonstrate that the purpose of foreclosure is to obtain payment on the underlying home loan. Such remedies would not exist if foreclosure were not undertaken for the purpose of obtaining payment. See Eric M. Marshall, Note, *The Protective Scope of the Fair Debt Collection Practices Act: Providing Mortgagors the Protection They Deserve From Abusive Foreclosure Practices*, 94 Minn. L.Rev. 1269, 1297–98 (2010). Accordingly, mortgage foreclosure is debt collection under the FDCPA.

Other provisions in the Act reinforce this view. The Act nowhere excludes from its reach foreclosure or the enforcement of security interests generally. In fact, certain provisions affirmatively suggest that such activity is debt collection. Section 1692f prohibits "debt collectors" from using "unfair or unconscionable means" to "collect any debt." After stating this general prohibition, the section sets forth a non-exhaustive list of specific activities prohibited thereunder, one of which is "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" if, e.g., "there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]" 15 U.S.C. § 1692f(6)(A). Foreclosure in some states is carried out in just this way—through "nonjudicial action," the result of which is to "effect dispossession" of the secured property. . . . The example's presence within a provision that prohibits unfair means to "collect or attempt to collect any debt" suggests that mortgage foreclosure is a "means" to collect a debt.

Consider also § 1692i. This section requires a debt collector bringing a legal action against a consumer "to enforce an interest in real property securing the consumer's obligation"—e.g., a mortgage foreclosure action—to file in the judicial district where the property is located. 15 U.S.C. § 1692i(a)(1). Although the provision itself does not speak in terms of debt collection, it applies only to "debt collectors" as defined in the first sentence of the definition, id. § 1692a(6), which does speak in terms of debt collection. This suggests that filing any type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act. . . .  (704 F.3d at 459-62)

The Sixth Circuit rejected the argument, advanced by Davidson Fink, that the reference to the

enforcement of security interests in §1692a(6) means that one who enforces a security interest

cannot also be a "debt collector":

We reject this reading of the statute. The third sentence in the definition does not except from debt collection the enforcement of security interests; it simply "make[s] clear that some persons who would be without the scope of the general definition are to be included where § 1692f(6) is concerned." *Piper*, 396 F.3d at 236; see *Shapiro & Zartman*, 823 P.2d at 124. It operates to include certain persons under the Act (though for a limited purpose); it does not exclude from the Act's coverage a method commonly used to collect

8

a debt. . . .

Other than repossession agencies and their agents, we can think of no others whose only role in the collection process is the enforcement of security interests. A lawyer principally engaged in mortgage foreclosure does not meet this criteria, for he must communicate with the debtor regarding the debt during the foreclosure proceedings . . . (704 F.3d at 463-64)

Finally, the Consumer Financial Protection Bureau ("CFPB") has taken the position that foreclosure litigation is subject to the FDCPA.  (Attachment 1)   The position of the CFPB, which is now authorized to enforce the FDCPA and issue regulations construing it, 15 U.S.C. §1692*l*, is entitled to deference.  *Kandalis v. Rowe*, 14 F.3d 173, 179  (2d Cir. 1994).

Davidson Fink asserts that state court procedural protections are sufficient.  However, the FDCPA expressly states that "Existing laws and procedures for redressing these injuries are inadequate to protect consumers" (15 USC §1692b), and the Supreme Court rejected Davidson Fink's argument in *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995), when it held that collection litigation in general was subject to the FDCPA notwithstanding the involvement of the court and the existence of the rules of professional conduct governing lawyers.

Davidson Fink also claims that its request for a deficiency merely "keeps open the possibility of seeking a deficiency judgment at a later time in the proceeding" and that further proceedings are necessary to obtain a deficiency.  (Def.Mem., p. 10 n. 4).  However, issues critical to the consumer's liability  – such as the mortgagee's standing to sue and the amount of the debt  – are necessarily determined in the "foreclosure" stage of the proceedings.   Section 1692g requires disclosures that go directly to these issues, such as identification of the present creditor or owner of the debt, and the amount of the debt.

In short, foreclosure litigation is covered by the FDCPA.  Most of the district court decisions on which Davidson Fink relies, such as *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F.Supp.2d 339 (D.Conn. 2012), reconsideration denied, No. 3:10cv244 (VLB), 2013 WL 1187046 (D.Conn., March 21, 2013), and *Fouche' v. Shapiro & Massey L.L.P.*,  575 F.Supp.2d 776 (S.D.Miss. 2008), pre-date decisions from the Circuits in which those districts are located

9

(Second, Fifth) that  apply the FDCPA to the collection of residential mortgage debts.  They are no longer good law.

## IV.   DAVIDSON FINK, BY PROVIDING A §1692g NOTICE,  ENGAGED IN A COMMUNICATION WITH A CONSUMER AND WAS REQUIRED TO COMPLY WITH §1692g

Davidson Fink next argues that because §1692g(d) [added in 2006 by the Financial Services Regulatory Relief Act of 2006, Pub.L. No. 109-351, § 802(a), 120 Stat. 1966] now provides that "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)", it was never required to comply with §1692g even though it engaged in a series of communications with plaintiff.  The argument is a house of cards.

At the outset, it is important to note that the ***reason*** that Congress amended the FDCPA to include §1692g(d) was to avoid consumer confusion that arose when the consumer was simultaneously provided with a validation notice stating that he had 30 days in which to dispute the debt by correspondence, and a summons which may provide a different time frame and require a court filing.  *Thomas v. Simpson & Cybak*, 392 F.3d 914, 919-20 (7th Cir. 2004); *Goldman v. Cohen*, 445 F.3d 152, 156-157 (2nd Cir. 2006); *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135-137 (2nd Cir. 2010).  Since ***any*** other oral or written communication with the consumer triggers §1692g  -- including a call concerning settlement of a debt following service of the complaint or a conversation about the debt in the hall outside a courtroom  –  collection lawyers still have to comply with §1692g, and generally do so by mailing a notice before filing a lawsuit.

Instead of doing what most collection lawyers now do, Davidson Fink chose to include a §1692g notice as an attachment to the complaint, although the §1692g notice is no longer a required or authorized part of the complaint under federal or state law.  When sued because the §1692g notice was substantively deficient, Davidson Fink argues that (1) since the summons and complaint is a "formal pleading in a civil action " to which §1692g does not apply, the

10

extraneous §1692g notice also need not comply with §1692g, and (2) none of the subsequent communications with Mr. Carlin is an "initial communication," either.  These arguments are meritless.

### 1.    A validation notice is an attempt to collect a debt and must comply with §1692g

A validation notice is quintessentially an attempt to collect a debt.  The statute describes the document as a "Notice of debt".  It is required to accurately describe the amount of the debt, identify the creditor to whom the debt is owed, inform the consumer of his rights to dispute the debt and obtain identification of the original creditor, and state that absent a dispute the debt will be assumed to be valid by the debt collector.  15 U.S.C. §1692g(a).  There is no question but that a §1692g notice meets the definition of "communication" in §1692a(2)   –   "the conveying of information regarding a debt directly or indirectly to any person through any medium".  A simple message asking for a return call is a "communication," *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D.N.Y. 2006), so a §1692g notice certainly is.

Davidson Fink provides no reason or authority for the proposition that if the validation notice or some other document that is not part of the complaint and summons is included with a complaint and summons, that it too becomes a "formal pleading in a civil action " entitled to the exemption.

The "FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated."  *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).   The FDCPA is liberally construed in favor of the consumer to effectuate its purposes.  *Cirkot v. Diversified Financial Systems, Inc.*, 839 F.Supp. 941, 944 (D. Conn. 1993); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

There are a number of decisions in which collection attorneys have included  extraneous documents with a summons and complaint as part of abusive tactics.  *Tolentino v. Friedman*, 833 F.Supp. 697, 698-99 (N.D.Ill. 1993), aff'd in pertinent part, 46 F.3d 645 (7th Cir. 1995)

(ominous "important notice" drafted by debt collector accompanied summons and complaint); *In re Humes*, 468 B.R. 346 (Bankr. E.D. Ark. 2011), later opinion, 496 B.R. 557 (Bankr. E.D. Ark. 2013) ("orange paper" attached to complaint asked consumer to call collection attorney to "avoid the necessity of you appearing in Court or filing an Answer"; consumer called attorney, made payment arrangements, but had default judgment entered against him).   Given this history, there is no reason why an exemption that Congress carefully limited to a "formal pleading in a civil action" should include notices which are neither required nor authorized to be part of a summons and complaint by any statute, rule or caselaw, but which the debt collector chooses to serve with the summons and complaint.  *Nikkel v. Wakefield & Associates, Inc.*, 10cv2411, 2011 WL 4479109 (D.Colo., Sept. 26, 2011) (letter accompanying service copy of summons and complaint is not exempt).

Moreover, if the §1692g notice attached to the complaint is ***not*** treated as a "communication" and an operative §1692g notice, it is highly misleading.  The notice expressly states that its receipt triggers the 30-day validation period.   Davidson Fink now contends that this is false and that its notice does not have this effect.  If the statement in the notice is not given effect, "consumers would have no way of knowing when the thirty day period for disputing the debt began to run."  *Castro v. Green Tree Servicing LLC*, No. 10–CV–7211 (ER), 2013 WL 4105196, *6 (S.D.N.Y., Aug. 14, 2013).   If there are further communications between the consumer and Davidson Fink, Davidson Fink can claim either that the communication is not a statutory "communication" for some reason (which it claims in this case) or that the time for requesting validation ran from the receipt of the notice attached to the complaint and has expired.  Davidson Fink is in effect admitting to a §1692e violation, involving the provision of a *faux* §1692g notice,  in order to escape liability under §1692g.[1]

Davidson Fink cites cases for the proposition that the inclusion of the notices required by

---

[1]  Since identification of the statutory section violated is not an essential part of a federal complaint, *Drennan v. Van Ru Credit Corp.*, 950 F.Supp. 858, 861 (N.D.Ill. 1996), the complaint states a valid claim in any case.

15 U.S.C. §§1692e(11) and 1692g does not bring within the FDCPA obligations which are not covered by the FDCPA, such as debts which were originated by the putative debt collector. *Kapsis v. American Home Mortg. Servicing Inc*., 923 F.Supp.2d 430, 440 (E.D.N.Y. 2013); *Caires v. JP Morgan Chase Bank, N.A.*, 880 F.Supp.2d 288 (D.Conn. 2012).  As demonstrated above, an attorney who undertakes collection of a delinquent residential mortgage debt and does so on a regular basis *is* covered by the FDCPA, and there is no authority for the proposition that sending a consumer a notice containing the §§1692e(11) and 1692g disclosures, without more, is not a "communication," so that any noncompliance of the disclosures with §§1692e(11) and 1692g can be ignored.

Thus, the Court should hold that the §1692g notice which Davidson Fink appended to the foreclosure complaint is a "communication" that is not a "formal pleading in a civil action," and therefore  triggered applicability of §1692g.

### 2.    Mr. Carlin's inquiry in response to the invitation extended by the §1692g notice is a "communication with a consumer"

Davidson Fink's motion also presumes that neither Cmplt., <u>Appendix B</u>, the inquiry which Mr. Carlin sent to Davidson Fink in response to the invitation expressly extended by means of the §1692g notice attached to the complaint, nor Cmplt., <u>Appendix C</u>, which is Davidson Fink's response to that inquiry, is "the initial communication with a consumer in connection with the collection of any debt".  The premise is that (a) communications initiated by the consumer in response to the service of a summons and complaint or an invitation from the debt collector are not covered, and (b) the debt collector's responses to the consumer's inquiries about the debt are not covered.

There is no basis in the statutory text for either proposition.  Section 1692g(a) is triggered by "the initial communication with a consumer in connection with the collection of any debt". The statute does not say "the initial communication by the debt collector to the consumer," which would be the case if Congress meant to limit §1692g to communications initiated by the debt collector.  "With" is consistent with either party initiating the communication.  Nor is there

any exemption for communications by the debt collector in response to questions asked by the consumer. Again, "communication" is defined in §1692a(2) as "the conveying of information regarding a debt directly or indirectly to any person through any medium," which is also consistent with either party initiating the communication.

If the principle of liberal construction in favor of the consumer means anything, it means that artificial limitations should not be added to the statutory language with the effect of limiting the rights of consumers.

In fact, consumers will frequently initiate contact with a debt collector upon learning that the collector is attempting to collect a debt. Credit monitoring services may alert a consumer that a debt collector has placed a debt on the consumer's credit report. The Federal Trade Commission advises consumers to obtain annual free copies of each of their credit reports, http://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports, which list collection accounts and inquiries from debt collectors.

Courts have recognized that credit reporting is a means of collecting a debt. "The act of a debt collector reporting the status of a consumer debt to a credit reporting agency is an activity that would certainly appear to meet the statute's requirement that the false, deceptive, or misleading representation or means be "in connection with" the collection of a debt." *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F.Supp.2d 492, 503 and n.4 (D. Md. 2004); *accord*, *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a credit card debt to a consumer reporting agency is a "powerful tool designed, in part, to wrench compliance with payment terms from its cardholder"); *Blanks v. Ford Motor Credit*, Civ.A. 3:04-CV-0331, 2005 WL 43981, *3 (N.D.Tex. Jan. 7, 2005) (improper credit reporting may be communication in connection with the collection of a debt); *Sullivan v. Equifax*, CIV.A. 01–4336, 2002 WL 799856, *4, 2002 U.S. Dist. LEXIS 7884 (E.D. Pa. Apr. 19, 2002) ("Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of §1692e(8) can subject a debt

14

collector to liability under the FDCPA"); *Davis v. Trans Union, LLC*, 526 F.Supp.2d 577, 586-7 (W.D.N.C. 2007) ("a debt collector's reporting of a consumer debt to a credit reporting agency would be covered by the FDCPA §1692e if the communication is false, deceptive, or misleading").

Consumers may learn that a lawsuit has been filed against them by receiving mail from bankruptcy attorneys. Foreclosure notices are often published in newspapers. Consumers may see a number on a caller ID device and dial it to see who called them.

A rule that the consumer who contacts the debt collector as a result of learning of activities of the debt collector is not entitled to the protections of §1692g or other provisions of the FDCPA which require a "communication with the consumer" (e.g., §§1692e(11), 1692c) would eviscerate many of the most important protections the FDCPA affords consumers. Moreover, it injects an irrelevant and extraneous inquiry into FDCPA lawsuits, namely why the consumer happened to contact the debt collector.

The FDCPA expressly recognizes that a consumer may contact the debt collector upon service of a summons and complaint. Thus, §1692e(15) prohibits "The false representation or implication that documents are not legal process forms or do not require action by the consumer", i.e., telling the consumer that his appearance is not required.

Davidson Fink relies heavily on *Lane v. Fein, Such and Crane, LLP*, 767 F.Supp.2d 382 (E.D.N.Y. 2011), where a foreclosure lawyer filed a complaint which, unlike this case, apparently did not contain a §1692g notice. The lawyer in *Lane* then received an unsolicited letter from the consumer disputing the debt. Unlike this case, the lawyer in *Lane* did not send correspondence responding to the consumer's letter.

The *Lane* court read into §1692g the qualification that only communications initiated by the debt collector qualified. The court acknowledged that the statutory language did not contain any restriction based on who initiated the communication, but opined that "the Court cannot conclude that this interpretation would be consistent with the general import of the statute,"

which was not to burden "any debt collector who receives an unsolicited letter from a consumer concerning a debt". (767 F.Supp.2d at 387)

Lane is readily distinguishable. In Lane, the summons and complaint did not have a §1692g notice or other extraneous communications attached. Moreover, unlike the consumer's letter in Lane, the letter from Mr. Carlin to Davidson Fink was hardly "unsolicited"; Davidson Fink expressly invited inquiries concerning the debt in the incomplete §1692g notice it served with the complaint and summons. Compare Trunzo v. CitiMortgage, Inc., 876 F.Supp.2d 521, 545 (W.D.Pa. 2012). Finally, Lane does not suggest that subsequent correspondence from the lawyer to the consumer, such as Cmplt., Appendix C, is exempt from §1692g.

In any event, the reasoning of Lane is flawed. The "general import" of the FDCPA is to protect consumers, not immunize debt collectors. A statute should not be construed to contain limitations or conditions which seriously limit its application, but are not reflected in its text. "Legislative intent is best evidenced by the language used by the legislature, and where an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express." Bhalerao v. Illinois Dept. of Financial and Professional Regulations, 834 F.Supp.2d 775, 794 (N.D.Ill. 2011). The limitation suggested in Lane is especially inappropriate because other sections of the FDCPA **do** refer to the initiation of communications by the debt collector, e.g., §§1692d(5) ("Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number") and (6) "the placement of telephone calls without meaningful disclosure of the caller's identity"). It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another. Keene Corp. v. United States, 508 U.S. 200, 208 (1993). Other decisions find §1692g violations when consumers call collection attorneys after being served with a complaint and receive information about payment or court dates, without being provided with

16

the statutorily-prescribed notice. *O'Brien v. Moores*, 784 F.Supp.2d 1054 (S.D.Ind. 2011) (collection attorney violated §1692g when consumer called number listed on collection complaint and received message stating to bring money to first court date).

There is no good reason why a professional debt collector, upon hearing from a consumer in *any* manner, cannot send a §1692g notice within five days. Indeed, it is so likely that a consumer who is named in a lawsuit will communicate with the debt collector in some way (a telephone call, a casual conversation outside a courtroom) that responsible debt collectors send a §1692g notice without waiting to see if the consumer contacts them.

In short, Cmplt., Appendix B is a "communication with a consumer" that triggered §1692g, even if the §1692g notice in Cmplt., Appendix A did not.

**3.     Cmplt., <u>Appendix C</u> is also a "communication with a consumer"**

Davidson Fink offers no authority or reasoning supporting the notion that its letter of August 9, 2013 (Cmplt., Appendix C), is not a "communication with a consumer in connection with the collection of any debt". It obviously provides information about the debt. Apparently Davidson Fink does not consider responding to inquiries from the consumer to be a "communication," even though they involve "the conveying of information regarding a debt directly or indirectly to any person through any medium," 15 U.S.C. §1692a(2). They plainly are "communications." *Pettway v. Harmon Law Offices, P.C., supra,* 03cv10932, 2005 WL 2365331, *5 (D.Mass., Sept. 27, 2005) (similar statement covered by the FDCPA).

**V.     DAVIDSON FINK DID NOT COMPLY WITH §1692g**

Neither the original validation notice attached to the complaint nor Cmplt., Appendix C complied with §1692g. Both failed to accurately state the amount of the debt, a required disclosure item. In addition, Cmplt., Appendix C does not contain any of the other disclosures required by §1692g; the statutory requirement of "a written notice" refers to a singular document and is not met by scattering the mandated disclosures in multiple documents sent over a period of weeks. *Castro v. Green Tree Servicing LLC, supra*, No. 10–CV–7211 (ER), 2013

17

WL 4105196, *6 (S.D.N.Y., Aug. 14, 2013) ("the express wording of §1692g requires that all of the information listed in the provision be contained within a single communication to the consumer.  Indeed, §1692g clearly refers to a singular 'written notice' when it directs the debt collector to 'send the consumer a written notice.' . . . if defendants' interpretation of the requirements of §1692g was correct, and debt collectors were permitted to send the required information to consumers in multiple, serial written communications, consumers would have no way of knowing when the thirty day period for disputing the debt began to run").[2]

The validation notice attached to the complaint states that "the amount of the debt is stated in the complaint hereto attached."  However, the complaint does not state the present amount of the debt. In Schedule C, it states the original loan amount and the principal balance owing.  This number does not include "interest, taxes, assessments, water rates, insurance premiums, escrow and/or other charges." (Foreclosure complaint, Paragraph "seventh").  A disclosure of part of the debt is not sufficient.  *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000) (not sufficient to state that unpaid principal balance of residential mortgage loan was $178,844.65, and that this did not include unspecified accrued but unpaid interest, unpaid late charges, escrow advances, and other charges authorized by loan agreement).

Cmplt., Appendix C also does not satisfy §1692g.  For one thing, it omits all of the disclosures other than the amount of the debt  – the statute requires "a" notice, not a series of documents.  And while it enclosed a "payoff statement" which stated a "Total Amount Due", it also stated that "the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued.  You will receive a refund if you pay the Total Amount Due and those anticipated fees, expenses, or payments have not been

---

[2]  Although Davidson Fink devotes Def.Mem., pp. 15-17 to a discussion of whether the documentation attached to Cmplt., Appendix C was sufficient to verify the debt, plaintiff raises no such claim.

18

incurred."

The "amount of the debt" does not include unearned attorney's fees and collection costs which might be incurred in the future. *Veach v. Sheeks,* 316 F.3d 690 (7th Cir. 2003) (improper to include "court costs, attorney's fees, or other penalties which may be imposed" by a court because "the amount of the debt provision is designed to inform the debtor (who, remember, has a low level of sophistication) of what the obligation is, not what the final, worst-case scenario could be"); *Spencer v. Hendersen-Webb, Inc.*, 81 F.Supp.2d 582, 591 (D.Md. 1999) (inclusion of fees that have not already been incurred is a violation); *Bernstein v. Howe*, IP 02–192–C–K/H, 2003 WL 1702254, *5 (S.D.Ind., March 31, 2003) ("Whether contractual or statutory, the fact remains that no attorney's fees actually were owed by Bernstein at the time Howe sent his letter. At most, there was the potential for an award of attorney's fees in the future, in the event that First Card incurred attorney's fees as a result of pursuing legal proceedings against Bernstein. *Veach* instructs that a debt collector violates the FDCPA by representing this potential for fees as a part of the debt owed."); *Pettway v. Harmon Law Offices, P.C., supra,* 03cv10932, 2005 WL 2365331, *6 (D.Mass., Sept. 27, 2005) (whether a subsequent communication that lumped together unaccrued with accrued attorney's fees, even with a disclosure, was unfair or deceptive presented a jury question); *Fritz v. Resurgent Capital Services, LP*, No. 11–CV–3300 FB VVP, 2013 WL 3821479, *4 (E.D.N.Y. July 24, 2013) (court costs which have not yet been awarded are not part of the amount of the debt). A requirement in a federal statute that information be disclosed means "*accurate* disclosure." *Gibson v. Bob Watson Chevrolet-GEO, Inc.*, 112 F.3d 283, 285-6 (7th Cir. 1997) (emphasis in original). It is particularly inappropriate to tell a homeowner who is strapped for funds that he or she needs to raise thousands of dollars more than is actually necessary.

Davidson Fink's inclusion of such unearned items is not supported by cases requiring or authorizing a warning that interest and late charges continue to accrue. E.g., *Miller v. McCalla, Raymer, supra.* These decisions require the debt collector to state (accurately) the actual amount

of the debt on a date certain  –  the date of the letter or perhaps one very close to it  –  but warn the consumer that interest and late charges continue to accrue.  Interest and late charges are recurring and readily calculable.   On the other hand, the consumer has no way of assessing a demand for unearned attorney's fees and collection expenses, which are just not owed.  *Veach v. Sheeks*, *supra*.

Thus, there is no document which contained all of the disclosures mandated by §1692g, including an accurate statement of the debt.

## VI.     CONCLUSION

For the reasons stated, Davidson Fink's motion to dismiss should be denied.


Respectfully submitted,

s/Cathleen M. Combs
Cathleen M. Combs
Tiffany N. Hardy
EDELMAN, COMBS,
       LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (fax)
akleinman@kleinmanllc.com

**CERTIFICATE OF SERVICE**

I, Cathleen M. Combs, hereby certify that on January 3, 2014, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system, which sent notification of such filing to the following parties via electronic mail:

Abraham Kleinman
akleinman@kleinmanllc.com

Andrew M. Burns
aburns@davidsonfink.com

Matthew J. Bizarro
mbizzaro@lbcclaw.com

Tiffany N. Hardy
thardy@edcombs.com

s/Cathleen M. Combs
Cathleen M. Combs

21