UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
ANDREW CARLIN, individually and on
behalf of a class,

                        Plaintiff,
                                                    MEMORANDUM & ORDER
          -against-                                 13-CV-6062(JS)(GRB)

DAVIDSON FINK LLP,

                        Defendant.
------------------------------------X
APPEARANCES
For Plaintiff:          Abraham Kleinman, Esq.
                        Kleinman, LLC
                        626 RXR Plaza
                        Uniondale, NY 11556-0626

                        Tiffany N. Hardy, Esq.
                        Cathleen M. Combs, Esq.
                        Edelman, Combs, Latturner
                          & Goodwin, LLC
                        120 S. Lasalle Street, 18th Floor
                        Chicago, IL 60603

For Defendant:          Matthew J. Bizzaro, Esq.
                        L'Abbate, Balkan, Colavita
                          & Contini, LLP
                        1001 Franklin Avenue, 3rd Floor
                        Garden City, NY 11530


SEYBERT, District Judge:

          Plaintiff Andrew Carlin ("Plaintiff") commenced this

putative class action against defendant law firm Davidson Fink LLP

("Davidson"), alleging that Davidson violated the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., in

connection with a residential foreclosure proceeding filed in New

York State Supreme Court, Nassau County.  Presently before the

Court are: (1) Plaintiff's motion for class certification pursuant Federal Rule of Civil Procedure 23 (Docket Entry 4); (2) Plaintiff's motion to "enter and continue" the motion for class certification (Docket Entry 6); and (3) Davidson's motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry 15). For the following reasons, each motion is DENIED.

BACKGROUND[1]

Plaintiff is the owner of real property in Sea Cliff, New York. (Compl. ¶ 4.) According to documents attached to the Complaint, the property is encumbered by a mortgage currently held by Deutsche Bank National Trust Company ("Deutsche"). (See Compl. App. A at 10-47[2].) Davidson is a law firm with practice areas that include debt collection and legal representation in New York State foreclosure proceedings. (Compl. ¶¶ 5-6, 8.)

On June 24, 2013, Deutsche, through Davidson, filed a summons and complaint against Plaintiff in New York State Supreme Court, Nassau County, seeking to foreclose on Plaintiff's Sea Cliff property (the "Foreclosure Complaint"). (Compl. ¶ 13, App. A.)

---

[1] The following facts are taken from the Complaint and the documents attached thereto and are presumed to be true for the purposes of this Memorandum and Order.

[2] The exhibits to the Complaint are labeled as "Appendices." If the Court refers to pages numbers of the Appendices, the Court will use the page numbers generated by the Electronic Case Filing system.

Included as an attachment to the Foreclosure Complaint was a notice labeled "NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT (THE ACT), 15 U.S.C. SECTION 1601 AS AMENDED" (the "Debt Collection Notice"). (Compl. App. A at 20.)  The Debt Collection Notice reads as follows:

1.   THE AMOUNT OF THE DEBT IS STATED IN THE COMPLAINT HERETO ATTACHED.

2.   THE PLAINTIFF AS NAMED IN THE ATTACHED SUMMONS AND COMPLAINT IS THE CREDITOR TO WHOM THE DEBT IS OWED.

3.   THE DEBT DESCRIBED IN THE COMPLAINT ATTACHED HERETO WILL BE ASSUMED TO BE VALID BY THE CREDITOR'S LAW FIRM, UNLESS THE DEBTOR, WITHIN THIRTY (30) DAYS AFTER THE RECEIPT OF THIS NOTICE, DISPUTES THE VALIDITY OF THE DEBT OR SOME PORTION THEREOF.

4.   IF THE DEBTOR NOTIFIES THE CREDITOR'S LAW FIRM WITHIN THIRTY (30) DAYS OF THE RECEIPT OF THIS NOTICE THAT THE DEBT OR ANY PORTION THEREOF IS DISPUTED, THE CREDITOR'S LAW FIRM WILL OBTAIN A VERIFICATION OF THE DEBT AND A COPY OF THE VERIFICATION WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

5.   IF THE CREDITOR NAMED AS PLAINTIFF IN THE ATTACHED SUMMONS AND COMPLAINT IS NOT THE ORIGINAL CREDITOR, AND IF THE DEBTOR MAKES A REQUEST TO THE CREDITOR'S LAW FIRM WITHIN THE THIRTY (30) DAYS FROM THE RECEIPT OF THIS NOTICE, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

6.   REQUESTS SHOULD BE ADDRESSED TO DAVIDSON FINK LLP, 28 EAST MAIN STREET, 1700 FIRST

FEDERAL PLAZA, ROCHESTER, NEW YORK 14614, (585) 760-8218.

7.    THE ABOVE-REFERENCED THIRTY (30) DAYS TIME PERIOD IN WHICH THE DEBTOR MAY DISPUTE THIS DEBT SHALL IN NO WAY AMEND OR EXTEND SAID DEBTOR'S STATUTORY TIME PERIOD, AS STATED IN THE ATTACHED SUMMONS, TO INTERPOSE AN ANSWER TO THE COMPLAINT IN THIS MATTER.

(Compl. App. A at 20 (capitalization in original).)  Attached to the Foreclosure Complaint was a schedule that listed an "original loan amount" of $200,000 and a "principal balance owing" of $179,005.01.  (Compl. App. A at 23.)  Additionally, the summons included a notice that states, _inter alia_, "WE ARE ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."  (Compl. App. A at 12 (capitalization in original).) Plaintiff alleges that he had not received any other communication from Davidson prior to receiving the Foreclosure Complaint. (Compl. ¶ 16.)

On July 12, 2013, Plaintiff sent Davidson a letter, stating, "I am in receipt of the Notice Required by the Fair Debt Collection Practices Act" (the "July 12th Letter").  (Compl. ¶ 20, App. B, at 43.)  The July 12th Letter enclosed a copy of the Debt Collection Notice, disputed the debt, and requested verification of the amount of the alleged debt and the creditor's name.  (Compl. App. B.)

4

On August 9, 2013, Davidson responded by letter (the "August 9th Letter"), stating:

> Pursuant to your Debt Validation Request . . . the following information has been provided:
>
> 1.  Your original Request
>
> 2.  Pay off statement
>
> 3.  Endorsed Note
>
> 4.  Mortgage
>
> 5.  Assignments of Mortgage
>
> 6.  Payment History

(Compl. ¶ 21, App. C.)  The August 9th Letter enclosed a document labeled "Payoff Statement," which was dated July 31, 2013 and listed a "Total Amount Due" of $205,281.79.  (Compl. App. C at 54-55.)  However, the Payoff Statement then stated that "the Total Amount due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued."  (Compl. App. C at 54.)  The Payoff Statement further stated that Plaintiff would "receive a refund if [he paid] the Total Amount Due and those anticipated fees, expenses, or payments ha[d] not been incurred."  (Compl. App. C at 54.)  Additionally, the body of the August 9th Letter included a notation labeled "FDCPA NOTICE," which states, "PLEASE BE ADVISED THAT DAVIDSON FINK LLP IS A LAW FIRM ACTING AS A DEBT

5

COLLECTOR.  THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE." (Compl. App. C at 53 (capitalization in original).)

Plaintiff commenced the present action on October 31, 2013.  He alleges that Davidson violated Section 1692g(a) of the FDCPA, which requires a debt collector to send a consumer a written notice containing, _inter_ _alia_, the amount of the alleged debt within five days after an "initial communication with [the] consumer in connection with the collection of [the] debt."  15 U.S.C. § 1692g(a).  Plaintiff alleges that Davidson is a "debt collector" and that it "attempted to provide the notice required by [§ 1692g(a) of the FDCPA]" by attaching the Debt Collection Notice to the Foreclosure Complaint and by sending Plaintiff the Payoff Statement after he requested validation of the amount of the debt.  (Compl. ¶ 14.)  However, Plaintiff contends that the Debt Collection Notice and the Payoff Statement both failed to comply with Section 1692g(a) because they did not accurately state the amount of the alleged debt.  (Compl. ¶¶ 19, 23-26.)

Plaintiff brings these claims on behalf of himself and a purported class of all individuals "against whom [Davidson] filed a foreclosure complaint . . . without also providing a letter containing the amount presently owed . . . ."  (Compl. ¶ 28.)  On November 4, 2013, before Davidson even appeared in this action, Plaintiff filed a motion for class certification and a motion to

6

"enter and continue," requesting that the Court delay ruling on the motion for class certification until after the parties conduct discovery.  (Mot. to Continue, Docket Entry 6; Mot. to Certify, Docket Entry 4, ¶ 25.)  On November 26, 2013, Davidson filed a letter objecting to the motion for class certification as premature.  (Docket Entry 13.)  On December 20, 2013, Davidson then moved to dismiss the Complaint.  (Docket Entry 15.)  These motions are currently pending before the Court.

<u>DISCUSSION</u>

The Court will first address Plaintiff's motion for class certification before turning to Davidson's motion to dismiss.

I.   <u>Motion for Class Certification</u>

According to Plaintiff's papers, Plaintiff has moved for class certification only to avoid having the putative class action claims mooted by a potential offer of judgment for full relief made pursuant to Federal Rule of Civil Procedure 68.  (Mot. to Continue ¶ 1.)  Plaintiff asks the Court to "enter" his motion for class certification and delay ruling until after the parties have conducted discovery.  (Mot. to Certify ¶ 25.)  The Court disagrees with this approach for the following reasons.

Rule 68 allows a defendant to "serve on an opposing party an offer to allow judgment on specified terms . . . ."  FED. R. CIV. P. 68(a).  In the Second Circuit, a Rule 68 offer of judgment

7

can moot a case, and thus divest the court of subject matter jurisdiction, if the offer equals or exceeds the amount of relief claimed by the plaintiff.  See Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013) (holding that the district court properly dismissed the action for lack of subject matter jurisdiction where the defendant offered "the full amount of relief sought by [the plaintiff]"); see also Abrams v. Interco Inc., 719 F.2d 23, 32 (2d Cir. 1983) ("[T]here is no justification for taking the time of the court and the defendant in the pursuit of . . . claims which [the] defendant has more than satisfied.").

However, the Second Circuit has not answered whether a putative class action should be dismissed for lack of subject matter jurisdiction when a Rule 68 offer of judgment for full relief is made to the named plaintiff prior to the filing of a motion for class certification.  See Franco v. Allied Interstate LLC, No. 13-CV-4053, 2014 WL 1329168, at *3 (S.D.N.Y. Apr. 2, 2014).  District courts in the Circuit are divided on the issue. Compare Franco, 2014 WL 1329168, at *5 (collecting cases) with Thomas v. Am. Serv. Fin. Corp., 966 F. Supp. 2d 82, 93-94 (E.D.N.Y. 2013) (collecting cases).  As one court explained,

> [s]ome courts readily compel a Rule 68 offer of complete relief to an individual plaintiff prior to certification and dismiss the case as moot without explicitly considering the timing of the offer.  Other courts consider the timing of the offer and the diligence of the plaintiff in pursuing class certification to

> determine if the plaintiff had a reasonable opportunity to file for certification or if there has been undue delay.  Yet, among these courts, there is no consistent definition of what constitutes a reasonable opportunity or an undue delay warranting dismissal.

Morgan v. Account Collection Tech., LLC, No. 05-CV-2131, 2006 WL 2597865, at *4 (S.D.N.Y. Sept. 6, 2006).

In light of this conflict, Plaintiff hastily filed his motion for class certification based on the preemptive procedure suggested by the Seventh Circuit in Damasco v. Clearwire Corp., 662 F.3d 891, 896 (7th Cir. 2011).  (See Mot. to Certify ¶ 25.) There, the Seventh Circuit held that a Rule 68 offer of judgment for full relief to the putative class plaintiff mooted the action where no motion for class certification was pending on the docket. Id. at 896.  The plaintiff argued that such a rule would allow defendants to pick off potential class actions by simply buying off the named plaintiff.  In response, the Seventh Circuit held that "[c]lass-action plaintiffs can move to certify the class at the same time that they file their complaint," reasoning that the pendency of such a motion would protect the putative class from an early Rule 68 offer to the named plaintiff.  Id.  The Seventh Circuit further held that if the parties have not yet developed the facts required for class certification, the plaintiff should file the motion anyway and ask the district court to delay ruling on the motion while the parties conduct discovery.  Id.

The Court need not address the merits of the procedure set forth in Damasco.  As Plaintiff acknowledges, the Second Circuit has not adopted such a procedure, and four other circuits have disagreed with Damasco's holding regarding the effect of a Rule 68 offer of judgment on a putative class action.  See Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1091-92 (9th Cir. 2011) ("[W]e hold that an unaccepted Rule 68 offer of judgment--for the full amount of the named plaintiff's individual claim and made before the named plaintiff files a motion for class certification--does not moot a class action."); Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1249-50 (10th Cir. 2011) (same); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 920-21 (5th Cir. 2008) (same, for collective action under the Fair Labor Standards Act); Weiss v. Regal Collections, 385 F.3d 337, 348 (3d Cir. 2004) ("Absent undue delay in filing a motion for class certification, . . . where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint.").  Additionally, at least two other district courts in this Circuit have explicitly rejected Damasco's suggested procedure of filing an undeveloped motion for class certification simultaneously with the complaint.  See Physicians Healthsource, Inc. v. Purdue Pharma L.P., No. 12-CV-1208, 2013 WL 4782378, at *1

(D. Conn. Sept. 6, 2013); 3081 Main Street, LLC v. Bus. Owners Liab. Team LLC, No. 11-CV-1320, 2012 WL 4755048, at *1 (D. Conn. Sept. 24, 2012)); but see Godson v. Eltman, Eltman & Cooper, P.C., 285 F.R.D. 255, 261 (W.D.N.Y. Sept. 11, 2012) ("tak[ing] no position on the merits of the Damasco decision or the procedure recommended therein but . . . . grant[ing] [plaintiff's] request [for] further discovery before ruling on the class-certification motion").

Here, the Court cannot certify a class because class certification "is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (emphasis added) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982)). Plaintiff concedes that the Court cannot possibly conduct such an analysis on the record as presently constituted because he has asked the Court to delay ruling on the motion while the parties conduct discovery. However, this Court finds, like other courts in this Circuit, that there is nothing to be gained by continuing or holding in abeyance a premature, undeveloped motion for class certification and allowing it to remain open on the docket indefinitely. Physicians Healthsource, 2013 WL 4782378, at *2; 3081 Main Street, 2012 WL 4755048, at *1. "To the extent that class allegations are preserved from mootness

11

by the filing of a premature motion for certification, they are no less preserved by an order denying that motion without prejudice to renewal before final judgment." Physicians Healthsource, 2013 WL 47882378, at *2. Thus, Plaintiff's motion for class certification is DENIED WITHOUT PREJUDICE and may be renewed after Plaintiff obtains the facts necessary to meet his burden of establishing that Rule 23's requirements have been met. Plaintiff's motion to enter and continue the motion for class certification is therefore also DENIED.

## II.  Motion to Dismiss

The Court will now turn to Davidson's motion to dismiss. The Court will first set forth the applicable legal standard.

### A.  Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir.2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72.

Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  Iqbal, 556 U.S. at 679.  Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.; accord Harris, 572 F.3d at 72.

The Court is confined to "the allegations contained within the four corners of [the] complaint."  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998).  However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir.2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

B.   Section 1692g(a)

"The FDCPA imposes liability on 'debt collectors' for certain prohibited debt collection practices."  Abrahmov v. Fid. Info. Corp., No. 12-CV-3453, 2013 WL 5352473, at *2 (E.D.N.Y. Sept. 23, 2013) (citation omitted).  Congress enacted the FDCPA "with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not

13

competitively disadvantaged.'" Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692e).  To establish a claim under the FDCPA, a plaintiff must satisfy the following threshold requirements: "(1) [t]he plaintiff must be a 'consumer;' (2) the defendant must be a 'debt collector;' and (3) the defendant must have committed some act or omission in violation of the FDCPA." Abrahmov, 2013 WL 5352473, at *2 (citation omitted); accord Suquilanda v. Cohen & Slamowitz, LLP, No. 10-CV-5868, 2011 WL 4344044, at *6 (S.D.N.Y. Sept. 8, 2011).

Here, the sole count of the Complaint alleges that Davidson violated Section 1692g(a) of the FDCPA.  Under Section 1692g(a), a "debt collector,"[3] when attempting to collect a debt from a "consumer,"[4] must provide the consumer with a detailed debt validation notice within five days after the initial communication with the consumer.  15 U.S.C. § 1692g(a).  The validation notice must provide the amount of the debt, the name of the current creditor, and a statement of the procedure by which the consumer can dispute the debt and obtain verification of the amount of the

---

[3] The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

[4] The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).

debt and the name and address of the original creditor, if different from the current creditor.   15 U.S.C. § 1692g(a).[5]

Plaintiff contends that Davidson failed to comply with Section 1692g(a) because both the Debt Collection Notice, which was attached as an exhibit to the Foreclosure Complaint, and the Payoff Statement, which was enclosed with Davidson's August 9th Letter, did not provide the amount of the alleged debt.   Davidson moves to dismiss this claim on three grounds: (1) Davidson was not acting as a debt collector under the FDPCA because the FDCPA does not apply to foreclosure actions; (2) an "initial communication" under the FDCPA never took place between Davidson and Plaintiff, and thus, the notice requirements of Section 1692g(a) were never triggered; and (3) even if an initial communication had taken place, Davidson did not violate Section 1692g(a) because the Payoff Statement properly stated the amount of the balance remaining on Plaintiff's mortgage.   The Court disagrees with Davidson for the following reasons.

---

[5] Under Section 1692g(b), if, within thirty days after receipt of the notice, the consumer disputes the debt in writing or requests the name and address of the original creditor, the debt collector "shall cease collection of the debt, or any disputed portion thereof," until the debt collector sends to the consumer verification of the debt and/or the name and address of the creditor.   15 U.S.C. § 1692g(b).

1.  Whether  There  Was  an  "Initial  Communication"
    Between Plaintiff and Davidson

The Court will first address Davidson's contention that an "initial communication" under the FDCPA never took place between Davidson and Plaintiff.  (See Def.'s Br., Docket Entry 17, at 12-15; Def.'s Reply Br., Docket Entry 21, at 5-9.)  Here, the only alleged communications between Plaintiff and Davidson were (1) the Foreclosure Complaint and the Debt Collection Notice attached as an exhibit; (2) Plaintiff's July 12th Letter to Davidson disputing the debt and requesting verification of the amount of the debt and the creditor's name; and (3) Davidson's August 9th Letter in response, which provided additional information regarding, inter alia, the balance remaining on Plaintiff's mortgage.  As discussed below, although the Court finds that the Foreclosure Complaint was not an initial communication under the FDCPA, Plaintiff has plausibly alleged that the subsequent letters between Plaintiff and Davidson were initial communications such that they triggered the notice requirements of Section 1692g(a).

With respect to the Foreclosure Complaint, it and its exhibits, including the Debt Collection Notice, were not "initial communications" under the FDCPA as a matter of law because Section 1692g(d) explicitly provides that "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for the purposes of [Section 1692g(a)]."  15

U.S.C. 1692g(d).  Plaintiff appears to argue that the Court should consider the Debt Collection Notice to be an initial communication nonetheless because, although it was included as an exhibit to the Foreclosure Complaint, it still is an "attempt to collect a debt." (See Pl.'s Opp. Br., Docket Entry 20, at 11-13.)  This is incorrect.  The Foreclosure Complaint and its exhibits constitute a formal legal pleading, and thus, the Debt Collection Notice cannot serve as an initial communication under Section 1692g(a). See Lane v. Fein, Such & Crane, LLP, 767 F. Supp. 2d 382, 286 (E.D.N.Y. 2011) (finding that the state court foreclosure complaint "is readily resolved to not be an 'initial communication'" because "Subsection 1692g(d) explicitly provides that legal pleadings are not 'initial communications,'" notwithstanding the fact that a debt collection notice was included with the summons and complaint)[6]; Sebrow v. Fein, Such, Kahn & Shepard, P.C., No. 10-CV-0215, 2010 WL 4553559, at *1 (D.N.J. Nov. 1, 2010) (same).

---

[6] Plaintiff incorrectly contends that Lane is distinguishable from this case because the foreclosure complaint in Lane "apparently did not contain" a debt collection notice.  (Pl.'s Opp. Br. at 15.)  However, although the Lane court did not explicitly state it in its written decision, a review of the docket in Lane reveals that the summons and complaint in the underlying foreclosure action were accompanied by a debt collection notice that stated "YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT A DEBT" and also described the procedure for disputing the alleged debt.  (See Compl. Ex. A, Lane v. Fein, Such, & Crane, LLP, No. 10-CV-2435 (E.D.N.Y. May 28, 2010), Docket Entry 1.)

However, Plaintiff has plausibly alleged that the subsequent letters between Plaintiff and Davidson were initial communications.  Davidson argues that these letters were not initial communications because it only sent the August 9th Letter as a response to Plaintiff's July 12th Letter, which, according to Davidson, was merely an unsolicited consumer request for information insufficient to trigger the notice requirements of Section 1692g(a).  (See Def.'s Reply Br. at 7-9.)  The Court disagrees.

The FDCPA does not define "initial communication." Section 1692g(a) only states that a debt collector must send a validation notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt."  15 U.S.C. § 1692g(a).  However, district courts in this Circuit "have held that the 'the FDCPA's protections are not triggered by communications initiated by someone other than the debt collector.'"  Derisme v. Hunt Leibert Jacobson P.C., 880 F. Supp. 2d 311, 329 (D. Conn. July 23, 2012) (quoting Boyd v. J.E. Robert Co., No. 05-CV-2455, 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010)).  Thus, courts have drawn a distinction between a debt collector's initial collection letter and a debt collector's response to an unsolicited consumer request for information--the former being an "initial communication" and the latter not.  See, e.g., Derisme, 880 F. Supp. 2d at 330 (finding that Section 1692g

18

was not triggered because the defendant "was merely responding to an inquiry initiated by the Plaintiff as to how she could bring her mortgage current"); Boyd, 2010 WL 5772892, at *13 (granting motion to dismiss an FDCPA claim because the plaintiff "failed to allege, let alone present any evidence, that the . . . defendants initiated any of the[ ] communications"); Nichols v. Wash. Mut. Bank, No. 07-CV-3216, 2007 WL 4198252, at *4 (E.D.N.Y. Nov. 21, 2007) (granting motion to dismiss an FDCPA claim because "the FDCPA was intended to protect consumers from communications initiated by debt collectors, not consumers" and "[the plaintiff] contacted [the defendant], not the reverse"); Gorham-Dimaggio v. Countrywide Home Loans, Inc., No. 05-CV-0583, 2005 WL 2098068, at *2-3 (N.D.N.Y. Aug. 30, 2005) (granting motion to dismiss the plaintiff's FDCPA complaint because the defendant "was merely responding to Plaintiff's inquiries as to how she could bring her mortgage current" and was not attempting to collect a debt).

The holdings of these cases rest on the premise that "the purpose of § 1692 is to ensure that communications initiated by the debt collector (not the consumer) are not abusive, deceptive, or unfair." Gorham-Dimaggio, 2005 WL 2098068, at *2 (emphasis in the original); see also Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) ("The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors." (emphasis added)). Thus, "when the consumer

initiates the communications, many of the policy reasons behind the FDCPA disappear." Gorham-Dimaggio, 2005 WL 2098068, at *2.

In Derisme, for example, the court held that Section 1692g was not triggered by the consumer's voluntary and unilateral letter asking how she could bring her mortgage current.  880 F. Supp. 2d at 329-31.  As the court explained:

> To permit a consumer to unilaterally trigger a debt collector's duty to validate the debt would unduly burden and potentially frustrate a valid debt collection process.  Requiring a debt collector to suspend or stay a foreclosure action following a consumer initiated communication outside of the legal proceeding would burden the courts unnecessarily as the judicial process affords a debtor an avenue to challenge the action by asserting any defenses she or he may have and requires that the debt collector prove its claim to the relief sought.
>
> . . . [t]he FDCPA's purpose in preventing deceptive or harassing actions taken by a debt collector is simply not furthered by imposing 1692g's obligations on a debt collector where the consumer voluntarily initiates the communication to inquire how to bring a debt current.

Id. at 330.  Because the evidence demonstrated that the defendant was merely responding to an unsolicited consumer request, the Derisme court found that a reasonable jury could only conclude that the defendant was not attempting to collect a debt and therefore granted summary judgment in the defendant's favor.  Id.

Here, unlike the cases cited above, based on the facts alleged and the documents attached to the Complaint, Plaintiff's

July 12th Letter was hardly an unsolicited request for information. To the contrary, Plaintiff states a plausible claim that he contacted Davidson only because of the Debt Collection Notice that Davidson included as an exhibit to the Foreclosure Complaint. The Debt Collection Notice is labeled, "NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT (THE ACT), 15 U.S.C. SECTION 1601 AS AMENDED," and it specifically states that Davidson will assume that the alleged debt is valid unless Plaintiff disputes it in writing within thirty days. (Compl. App. A at 20.) In the first line of the July 12th Letter, Plaintiff stated that he was "in receipt of the [Debt Collection Notice]." (Compl. App. B.) Plaintiff also enclosed a copy of the Debt Collection Notice and responded directly to the specific items set forth in the Debt Collection Notice. All of these alleged facts suggest that Plaintiff's July 12th Letter was prompted by Davidson's Debt Collection Notice and that it was not merely an unsolicited request for information as Davidson contends. Moreover, Davidson's August 9th Letter in response includes an "FDCPA NOTICE" stating "PLEASE BE ADVISED THAT DAVIDSON FINK LLP IS A LAW FIRM ACTING AS A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE." (Compl. App. C at 53.) These facts make this case distinguishable from the cases cited above and plausibly state a claim that Plaintiff and Davidson engaged in "[an] initial communication . . . in connection with

21

the collection of a debt . . . ."  15 U.S.C. § 1692g(a).
Accordingly, to the extent Davidson seeks dismissal on the ground
that there was no initial communication under the FDCPA, its motion
to dismiss is DENIED.

    2.   <u>Whether Davidson Was Acting as a "Debt Collector"</u>

        Davidson also argues that Plaintiff cannot state an
FDCPA claim because a mortgage foreclosure action does not
constitute debt collection under the FDCPA.  (Def.'s Br. at 5-12.)
Davidson specifically argues that it was not engaged in debt
collection because the Foreclosure Complaint seeks only to
foreclose on Plaintiff's property, but does not seek a monetary
judgment against Plaintiff.  (Def.'s Br. at 8.)  In support of
this argument, Davidson relies primarily on two district court
decisions from this Circuit holding that "the enforcement of a
security interest through foreclosure proceedings that do not seek
monetary judgments against debtors is not debt collection for
purposes of the FDCPA."  <u>Boyd v. J.E. Robert Co.</u>, No. 05-CV-2455,
2013 WL 5436969, at *9 (E.D.N.Y. Sept. 27, 2013); <u>see also</u> <u>Derisme</u>,
880 F. Supp. 2d at 325 ("[F]oreclosing on a mortgage does not
qualify as debt collection activity for purposes of the FDCPA.").
The parties spend a great deal of time arguing over whether the
FDCPA does in fact apply to foreclosure-related activities even
though a majority of courts has found that it does not.  <u>See</u>
<u>Derisme</u>, 880 F. Supp. 2d at 325 ("Although there is a split of

authority on this issue, it appears that a majority of courts who have addressed this question have also concluded that foreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA.").[7]

However, neither party addresses the dispositive issue here, which is whether Davidson can pursue a foreclosure action and also engage in debt collection under the FDCPA.  In this regard, the Court finds persuasive the decision in Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211 (11th Cir. 2012), where the Eleventh Circuit held that "[a] communication related to debt collection does not become unrelated to debt collection simply

---

[7] See, e.g., Warren v. Countrywide Home Loans, Inc., 342 F. App'x 458, 461 (11th Cir. 2009) ("[S]ince foreclosing on a home is not debt collection for purposes of § 1692g, [the plaintiff] did not, and could not, state a claim under that provision based on [the defendant's] foreclosure sale of his home."); DeMoss v. Peterson, Fram & Bergman, No. 12-CV-2197, 2013 WL 1881058, at *2 (D. Minn. May 6, 2013) ("[T]his court has previously held that foreclosure activities do not constitute debt collection under the FDCPA."); Lara v. Aurora Loan Servs. LLC, No. 12-CV-0904, 2013 WL 1628955, at *7 (S.D. Cal. Apr. 16, 2013) ("[N]umerous district courts, including several in the Ninth Circuit, have also held that the activity of foreclosing on [a] property pursuant to a deed of trust is not collection of a debt within the meaning of the FDCPA." (internal quotation marks omitted) (alterations in original)); but see Glazer v. Chase Home Finance LLC, 704 F.3d 453, 461 (6th Cir. 2013) (holding that a mortgage foreclosure constitutes debt collection under the FDCPA because "every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e., forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt" (emphasis in original)).

because it also relates to the enforcement of a security interest." 678 F.3d at 1218; see also Romea v. Heiberger & Assocs., 163 F.3d 111, 117 (2d Cir. 1998) (holding that a notice sent in connection with eviction proceedings was a communication related to debt collection because the notice aimed "at least in part to induce [the debtor] to pay the back rent she allegedly owed").   Just because Davidson commenced a foreclosure action does not mean that every subsequent communication with Plaintiff is automatically not for the purpose of debt collection.   To the contrary, as discussed in the prior section, Plaintiff has alleged facts suggesting that Davidson was engaged in debt collection notwithstanding the fact that Davidson also filed a foreclosure action.   Accordingly, Davidson's motion to dismiss in this regard is DENIED.

### 3.   Whether Davidson Complied with Section 1692g(a)

Finally, Davidson argues that it did not violate Section 1692g(a) because the Payoff Statement enclosed with the August 9th Letter stated the total amount of the debt.   (See Def.'s Br. at 15-19.)   The Payoff Statement lists a "Total Amount Due" of $205,281.79, but then states that "the Total Amount due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued."   (Compl. App. C at 54 (emphasis added).) Plaintiff claims that this statement violated Section 1692g(a)(1)

24

because it includes unidentified, unaccrued amounts.  (See Pl.'s Opp. Br. at 18-20.)  The Court agrees with Plaintiff.

To determine whether a debt collector has violated Section 1692g(a), courts use "an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice [received from the debt collector]."  Soffer v. Nationwide Recovery Sys., Inc., No. 06-CV-435, 2007 WL 1175073, at *3 (E.D.N.Y. Apr. 19, 2007) (citing Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005); Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996); Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir. 1993)).  The Second Circuit has described the "least sophisticated consumer" standard as "an objective analysis that seeks to protect the naive from abusive practices while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters."  Greco, 412 F.3d at 363 (2d Cir. 2005) (internal citations and quotation marks omitted).

The validation notice must convey the information required by Section 1692g(a) "'clearly and effectively' so that 'the least sophisticated consumer [will not be] uncertain as to her rights.'"  Stark v. RJM Acquisitions LLC, No. 08-CV-2309, 2009 WL 605811, at *3 (E.D.N.Y. Mar. 9, 2009) (alteration in the original) (quoting Savino v. Computer Credit Inc., 164 F.3d 81, 85 (2d Cir. 1996)).  In addition, even if the validation notice

complies   with   1692g(a),   "a   debt   collector   violates
§ 1692g(a) . . . if that notice is overshadowed or contradicted by
other language in communications to the debtor." Sarno v. Midland
Credit Mgmt., Inc., No. 10-CV-4704, 2011 WL 349974, at *2 (S.D.N.Y.
Jan. 31, 2011) (quoting Jacobson v. Healthcare Fin. Servs., Inc.
516 F.3d 85, 90 (2d Cir. 2008)) (alteration in original).

        Here, rather than state the actual and current amount
due, the Payoff Statement states that the total amount due "may
include estimated fees, costs, additional payments and/or escrow
disbursements" that were not yet due as of the date of the Payoff
Statement. (Compl. App. C at 54 (emphasis added).)  This language,
by stating that the total amount due "may" include "estimated"
amounts, makes it unclear to anyone, sophisticated consumer or
not, what amount is actually due.  The Payoff Statement does not
state whether the total amount stated actually includes these
estimated amounts, it does not identify what these amounts are
for, and it does not explain how they are "estimated."  Thus, the
Payoff  Statement  fails  to  comply  with  Section  1692g(a)(1)'s
requirement that the debt collector state the amount of the debt.
See Rozier v. Fin. Recovery Sys., Inc., No. 10-CV-3273, 2011 WL
2295116, at *3 (E.D.N.Y. June 7, 2011) (holding that collection
letter that "list[ed] a balance due of $2398.23, but then state[d]
that 'interest, late charges, and other charges may or may not be

applicable to this account'" violated Section 1692g(a)'s disclosure requirement).

To support its contention that the Payoff Statement accurately states the total amount due, Davidson relies primarily on cases where the communication at issue contained the current amount due but then also stated that the amount would increase due to accruing interest.  See Williams v. OSI Educ. Servs., Inc., 505 F.3d 675 (7th Cir. 2007); Golubeva v. GC Services Limited P'ship, 767 F. Supp. 2d 369 (E.D.N.Y. 2010).  However, these cases are inapplicable here because the language at issue does not simply say that the total amount will increase due to ascertainable future costs.  Rather, it says that there "may" be estimated amounts included in the total amount due.  This has nothing to do with the possibility that the total amount due will increase due to interest, which is readily calculable.

Davidson's reliance on Kolganov v. Phillips & Cohen Assocs., Ltd., No. 02-CV-3710, 2004 WL 958028 (E.D.N.Y. Apr. 8, 2004) is also misplaced.  There, the court suggested that a debt collector could comply with Section 1692g(a)(1)'s disclosure requirement by

> stat[ing] the amount of debt, including interest and all other charges, due on a date certain in the future after the debtor's receipt of the letter.  A debtor that chooses to timely pay the debt is advised of the amount of payment that will completely satisfy his obligation.  On the other hand, a debtor that

> neglects his or her account is notified of the
> ever-increasing amount that accrues by the
> failure to promptly satisfy the debt.

Id. at *2.  Davidson appears to argue that it complied with Section 1692g(a)(1) by following the suggestion set forth in Kolganov. However, even if the method in Kolganov is acceptable, the language at issue does not even comply with Kolganov's suggested approach. Kolganov therefore does not remedy the fact that the Payoff Statement does not state in clear terms the total amount due. Thus, Plaintiff has plausibly alleged that Davidson failed to comply with Section 1692g(a).

In sum, the Court finds that Plaintiff has plausibly alleged that Davidson was acting as a debt collector, that it engaged in an initial communication with Plaintiff, and that it failed to comply with Section 1692g(a).  Accordingly, Davidson's motion to dismiss is DENIED.

[REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY]

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for class certification (Docket Entry 4) is DENIED WITHOUT PREJUDICE; Plaintiff's motion to enter and continue the motion for class certification (Docket Entry 6) is DENIED; and Davidson's motion to dismiss (Docket Entry 15) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      September  23 , 2014
            Central Islip, NY

29